HARTZ MOUNTAIN CORPORATION,
Appellant

v.

Donald L. DOTSON, Chairman, National
Labor Relations Board, et al.

No. 83–1307.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 22, 1983.

Decided Feb. 24, 1984.

William C. Zifchak, New York City, for appellant. Thomas J. Madden, New York City, and Nicholas Allard, Suffern, N.Y., also entered appearances for appellant.

Susan T. Papadopoulos, Atty., N.L.R.B., Washington, D.C., for appellees. Margery E. Lieber, Deputy Asst. Gen. Counsel, and James Y. Callear, Atty., N.L.R.B., Washington, D.C., were on the brief, for appellees.

Before MIKVA and EDWARDS, Circuit Judges, and BAZELON, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

This appeal arises out of a suit filed in District Court by Hartz Mountain Corporation ("Hartz") seeking declaratory and injunctive relief against two orders issued by the National Labor Relations Board ("NLRB" or "Board") in connection with union representation election proceedings involving employees at Hartz. In particular, Hartz seeks to nullify a November 22, 1982 order of the Board certifying District 65, United Automobile, Aerospace and Agricultural Workers of America ("District 65"), the winner of a 1982 Board-conducted representation election, as the bargaining agent of Hartz's employees. Hartz also seeks to set aside an earlier Board order which nullified the results of a 1979 elec-

tion, won by Local 806 of the International Brotherhood of Teamsters ("Local 806"), after Local 806 expressly disclaimed any interest in representing Hartz's employees.

The District Court ruled that Hartz's complaint should be dismissed and summary judgment entered for the Board. In reaching this result, Judge Parker ruled that the District Court was without jurisdiction to hear appellant's case because Hartz "ha[d] failed to demonstrate that the Board violated a clear and specific statutory mandate [of the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* (1976) (the "Act")] when it ordered a second election." *Hartz Mountain Corp. v. Van de Water,* No. 82–3412, slip op. at 11 (D.D.C. Jan. 31, 1983), *reprinted in* 97 Lab.Cas. (CCH) ¶ 10,038, at 17,161 (D.D.C.1983). Judge Parker also noted that Hartz "is not disadvantaged nor is it without a remedy. It can obtain review of the Board's representation decisions under Section 10(e) and (f) of the Act which precludes this Court from assuming jurisdiction over this matter." *Id.*

Because we find the decision of the District Court to be unassailable, we affirm it in all respects.

## I. BACKGROUND

On April 20, 1979, Local 806 won a representation election covering a unit of production, warehouse, clerical and maintenance employees at Hartz's Jersey City, New Jersey distribution warehouse. Shortly thereafter, District 65, which had competed against Local 806 in the 1979 election, filed objections to the election. District 65 had also filed an unfair labor practice charge against Hartz prior to the election, alleging that Hartz had unlawfully assisted Local 806 and discriminated against District 65 during the election campaign. The Board scheduled a consolidated hearing on the objections to the election and the unfair labor practice charge against Hartz to be held on January 14, 1980.

On September 21, 1979, District 65 filed another unfair labor practice charge against Hartz, alleging that the company had unlawfully refused to recognize and bargain with District 65 as the employees' bargaining agent. The Regional Director of the Board refused to amend District 65's complaint against Hartz to include this refusal to bargain charge. District 65 appealed this ruling to the General Counsel of the Board. On March 25, 1981, more than a year later, the General Counsel reversed the decision of the Regional Director and issued an amended complaint against Hartz. A consolidated hearing on District 65's objections to the election and unfair labor practice charges against Hartz was then scheduled to commence in June of 1981.

Just prior to the commencement of the consolidated hearing, Local 806 requested interim certification pending the conclusion of the hearing, and the Board denied this request. The General Counsel of the Board then presented the Board's case against Hartz on various days in June, September, and October of 1981. Counsel for Local 806 did not participate in this proceeding before the Board, except to attend a meeting held to discuss the possibility of settling the controversy. During the course of the proceeding, after the General Counsel had presented the Board's case, but before Hartz had had an opportunity to respond to the Board's allegations, Local 806 filed with the Regional Director of the Board a written disclaimer of interest in representing Hartz's employees in Jersey City. Thereupon, District 65 moved to dismiss its objections to the 1979 election and its unfair labor practice complaints against Hartz, on the conditions that the election be declared a nullity and that a second election, with District 65 as the only union on the ballot, be held.

The Administrative Law Judge ("ALJ") who was presiding at the consolidated hearing invited the parties to submit written memoranda in support of, or in opposition to, District 65's motion. Hartz opposed approval of the disclaimer of interest filed by Local 806, claiming that Local 806 had acted because the union's financial resources had been depleted by the years of litigation over its right to represent Hartz's employees in Jersey City. In light of these circum-

stances, Hartz argued, approval of the disclaimer would encourage delays in certification proceedings and thereby defeat the purpose of the Act to resolve expeditiously questions of employee representation. The ALJ concluded that while there are exceptions to the general rule that a labor organization may choose to disclaim interest in representing a group of employees—for example, where "surrounding circumstances justify an inference" that the disclaimer is equivocal, where the disclaimer "would be prejudicial to the other parties in an election," or where the disclaimer was not voluntarily made—he found none of these exceptions to be applicable in this case. *Hartz Mountain Corp.*, 260 N.L.R.B. 323, 325–326 (1982). The ALJ thus recommended the approval of Local 806's disclaimer of interest; the ALJ also found that no purpose would be served by certifying the results, or adjudicating the validity, of the 1979 election. He therefore proposed that District 65's motion to dismiss be granted and that a second election be held with District 65 as the only union on the ballot. *Id.* at 327. The ALJ's proposed decision was approved by a three-member panel of the Board on February 19, 1982. *Id.* at 323.

A second election was held on March 19, 1982. District 65 won that election, receiving 134 votes to 101 for Hartz. The company filed objections to the election, but an ALJ recommended that the objections be overruled. On November 22, 1982, a three-member panel of the Board adopted the ALJ's recommendation and certified District 65 as the exclusive bargaining representative. On August 4, 1983, the Board issued an order directing Hartz to bargain with District 65. *Hartz Mountain Corp.*, 266 N.L.R.B. No. 211 (1983).

On November 30, 1982, Hartz filed its complaint in the District Court seeking declaratory and injunctive relief against the two Board orders, wherein the Board approved Local 806's disclaimer of interest, declined to certify the results of the first election, directed that a second election be held, and certified District 65 as the bargaining representative of Hartz employees. As noted above, the District Court dismissed Hartz's complaint and granted summary judgment in favor of the Board.

## II. DISCUSSION

Despite the unconscionable delays that have attended the processing of various aspects of this case,[1] the applicable legal principles are straightforward and clear. On the record before us, there can be no doubt over the conclusion that the District Court was fully justified in granting summary judgment for the Board. Accordingly, because we find that the District Court correctly ruled that it lacked jurisdiction to review the orders of the Board, we affirm.

### A. *Judicial Review of Representation Proceedings Before the National Labor Relations Board*

The cases are legion holding that, as a general rule, Board orders emanating from representation proceedings are not directly reviewable in court. This point was first enunciated by the Supreme Court in *American Federation of Labor v. NLRB*, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347 (1940), where it was held that a Board certification was not a "final order" within the meaning of section 10(f) of the Act. *Id.* at 411, 60 S.Ct. at 305. The Court noted that "[t]he conclusion is unavoidable that Congress, as the result of a deliberate choice of conflicting policies, has excluded representation certifications of the Board from the review by federal appellate courts authorized by the Wagner Act except in the circumstances specified in § 9(d)." *Id.*

Numerous judicial opinions since *American Federation of Labor* have noted that, in establishing an indirect method of review, Congress intended that employee bargaining rights be effectuated and employer bar-

---

1. Both the Board and the employer have contributed to these case processing delays. The General Counsel and the Board have squandered an excessive amount of time in resolving issues raised by the parties, and the employer has compounded the problem, first by filing a frivolous "appeal" in District Court and then by pursuing the matter in this court.

gaining obligations clarified without the time-consuming delays that would be entailed with direct judicial review of Board representation orders. *See, e.g., Boire v. Greyhound Corp.,* 376 U.S. 473, 477–78, 84 S.Ct. 894, 896–97, 11 L.Ed.2d 849 (1964). In particular, Congress was concerned that the time required to process a direct appeal might cause the erosion of a union's support among bargaining unit employees, or furnish a recalcitrant employer with an opportunity for dilatory litigation to avoid bargaining with a certified union. "In effect, Congress declared that the person aggrieved by a Board representation decision is obliged to precipitate an unfair labor practice proceeding as a means of securing review in the appellate courts." R. GORMAN, BASIC TEXT ON LABOR LAW 60 (1976).

Although the principle of *American Federation of Labor* has been firmly enforced for over four decades now, the Supreme Court has established one important and extremely narrow exception to the general rule that Board representation· orders are not subject to direct judicial review. In *Leedom v. Kyne,* 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), the Board had included both professional and nonprofessional employees in a bargaining unit and had refused to conduct a vote among the professional employees to ascertain whether a majority of said employees desired to be included in a unit with the nonprofessional employees. A suit was brought by a professional employee's union in federal district court to set aside the Board certification as violative of section 9(b)(1) of the Act, which provides that "the Board shall not . . . decide that any unit is appropriate . . . if such unit includes both professional employees and employees who are not professional employees unless a majority of such professional employees vote for inclusion in such unit." 29 U.S.C. § 159(b)(1) (1976). In light of this specific statutory mandate, the Supreme Court held that the district court had jurisdiction to review the Board's order. In other words, in *Kyne,* the Court held that

the certification was subject to the equity jurisdiction of the federal district courts

and that such courts could entertain suits to set aside certification orders when the Board had plainly exceeded its statutory authority and there was no other adequate remedy. The Court emphasized that Congress had specifically created the right in question and that, unless district courts had equity jurisdiction, the right would be meaningless.

II THE DEVELOPING LABOR LAW 1715 (C. Morris ed., 2d ed. 1983).

The *Kyne*-type suit, *i.e.,* "to strike down an order of the Board made in excess of its delegated powers and contrary to a specific prohibition in the Act," *Leedom v. Kyne,* 358 U.S. at 188, 79 S.Ct. at 183, is in reality the only truly significant exception to the requirement of indirect review of Board orders in representation proceedings that has been recognized by the Supreme Court. The only other exception that has been acknowledged by the Court arose in a case presenting a "uniquely compelling justification for prompt judicial resolution" because of its effect on *foreign relations. McCulloch v. Sociedad Nacional de Marineros de Honduras,* 372 U.S. 10, 17, 83 S.Ct. 671, 675, 9 L.Ed.2d 547 (1963).

Court decisions rendered since *Kyne* and *Sociedad Nacional* have made it hornbook law that, except in the rarest of circumstances, district courts are without jurisdiction to entertain direct appeals of Board actions in representation or unfair labor practice cases:

The limited scope of the *Leedom v. Kyne* exception was underscored by the Supreme Court in *Boire v. Greyhound* [376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964)]. The Court held that a district court did not have jurisdiction to enjoin a representation election based on allegations that the Board had erroneously determined that two separate enterprises were joint employers. It expressly restricted the *Kyne* exception to instances where the error of the Board is patently an incorrect construction of the Act. A finding of fact, though contrary to the weight of the evidence, is not reviewable under the *Kyne* exception. The Court

stressed that "[t]he Kyne exception is a narrow one, not to be extended to permit plenary district court review of Board orders in certification proceedings whenever it can be said that an erroneous assessment of the particular facts before the Board has led it to a conclusion which does not comport with the law." [*Id.* at 481, 84 S.Ct. at 899]. Exceptions to the rule against direct review of certification or collateral attack on representation orders would only be cases "characterized by extraordinary circumstances."

Generally, the lower courts have taken this admonition to heart and have exhibited great reluctance to find the *Leedom v. Kyne* or *McCulloch v. Marineros* [372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963)] exceptions applicable to any situation in which the Board has not acted patently and manifestly without legality. Thus, allegations that the Board has violated its congressional mandate by withdrawing contract-bar protection for agreements existing prior to the enactment of the amendments relating to hot-cargo clauses, or has acted arbitrarily in finding bus dispatchers not to be supervisors as defined in Section 2(11) of the Act, have been held insufficient to invoke jurisdiction under the *Kyne* exception. Moreover, courts have denied jurisdiction to review Board action in representation proceedings where the issues involved were factual, did not clearly violate a statutory stricture, involved procedural matters for the Board to determine, or when the issue could have been raised in an unfair labor practice proceeding.

Only where the Board has clearly violated an express provision of the statute and the plaintiff has no means of obtaining review through a refusal to bargain, have the courts granted relief under *Kyne.*

II THE DEVELOPING LABOR LAW 1716–18 (C. Morris ed., 2d ed. 1983) (footnotes omitted).

Recently, this court has had occasion to consider the application of *Kyne* in *Physi-*

cians Nat. House Staff Ass'n v. Fanning, 642 F.2d 492 (D.C.Cir.1980) (en banc), *cert. denied,* 450 U.S. 917, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1981). In *Physicians* we made it unmistakably clear that the *Kyne* exception is extraordinarily narrow:

> Thus in order to qualify for the *Leedom v. Kyne* exception a plaintiff must be able to identify a specific provision of the Act which, although it is "clear and mandatory", *id.* [358 U.S.] at 188, 79 S.Ct. at 183, has nevertheless been violated by the Board. That the Board may have made an error of fact or law is insufficient; the Board must have acted without statutory authority.

642 F.2d at 496 (footnote omitted).

Although the majority opinion in *Physicians* says that "it is not the unavailability of a remedy which triggers the *Kyne* exception, but the violation of a clear statutory demand," 642 F.2d at 499 (citing *Cihacek v. NLRB,* 464 F.Supp. 940, 944 (D.Neb.1979)), this cannot be read to nullify the importance of the availability of an alternative remedy. The majority opinion in *Physicians* merely reflects a view that the absence of an alternative means of redress is irrelevant when a plaintiff can point to no violation of a clear statutory mandate. In other words, the opinion effectively holds that the unavailability of judicial review is not *by itself* enough to trigger the *Kyne* exception. However, where there is a tenable claim that the Board has violated a "clear and mandatory" provision of the Act, "the availability of eventual recourse to judicial review is an important consideration for a court asked to exercise its equitable powers under the *Kyne* exception." *Physicians,* 642 F.2d at 512 (Wright, C.J., dissenting). This is the teaching of our opinions in *Miami Newspaper Printing Pressmen's Union Local 46 v. McCulloch,* 322 F.2d 993, 997 n. 7 (D.C.Cir.1963) and *Leedom v. IBEW Local 108,* 278 F.2d 237, 239 (D.C.Cir.1960), and nothing in *Physicians* may be seen to change the law of the circuit on this point.[2]

---

**2.** It might be argued that, in light of *Boire v. Greyhound Corp.,* 376 U.S. 473, 84 S.Ct. 894, 11

L.Ed.2d 849 (1964), the *sole* test for the application of the *Kyne* exception should be whether

**1313**

### B. The Statutory Command of Section 9(c)(1)

In arguing that an exception under *Kyne* should be recognized in this case, the appellant claims that the Board violated the express command of section 9(c)(1) by declining to certify the results of the first election. Section 9(c)(1) provides, in pertinent part, that

> [w]henever a petition shall have been filed, in accordance with such regulations as may be prescribed by the Board—
>
> . . . .
>
> the Board shall investigate such petition and if it has reasonable cause to believe that a question of representation affecting commerce exists shall provide for an appropriate hearing upon due notice. Such hearing may be conducted by an officer or employee of the regional office, who shall not make any recommendations with respect thereto. If the Board finds upon the record of such hearing that such a question of representation exists, it shall direct an election by secret ballot and shall certify the results thereof.

29 U.S.C. § 159(c)(1) (1976). The appellant argues that "the sole test for asserting District Court jurisdiction under *Leedom v. Kyne* is whether the Board has violated an express statutory provision." Appellant's brief at 14. The appellant also contends that "section 9(c)(1) mandates that the Board must adjudicate and 'shall certify'

the results of an election absent a showing that the election was invalid." Appellant's brief at 17.

We find the appellant's arguments to be wholly unpersuasive for several reasons. First, appellant has misread the law of this circuit pertaining to the importance of access to alternative means of redress. *See* note 2 *supra.* Second, the explicit terms of section 9(c)(1) plainly do not comport with appellant's construction of the statute. Third, the case law in the circuit flatly rejects appellant's position. And, finally, sound policy militates against any attempted expansion of the *Kyne* exception in this case.

■ Initially, we would note that much of appellant's argument goes directly to the *merits* of the claim being advanced. Faced with these arguments, it is tempting for a court to second-guess the Board with respect to the judgments that it has made in the representation proceeding. However, this is precisely what the Supreme Court cautioned against in *American Federation of Labor, Leedom v. Kyne* and *Boire v. Greyhound,* and we will not fall prey to the temptation. As has been aptly noted:

> It is correct procedure in these cases for the court simply to hold that the statutory mandate is not unequivocal and compelling; *any colorable support for the Board's ruling should be treated as a jurisdictional defect dictating dismissal.*

the Board has violated a specific statutory command. In *Boire,* although the plaintiff-employer presumably had access to judicial review by refusing to bargain and contesting the Board's order in an unfair labor practice case, this factor was never specifically cited by the Court in rejecting the employer's attempt at direct review under the *Kyne* exception. It might be contended, therefore, that direct review of a violation of a clear and mandatory provision of the Act should not be denied to a party merely because indirect review is otherwise available. *See Bullard Co. v. NLRB,* 253 F.Supp. 391, 395 (D.D.C.1966); R. GORMAN, BASIC TEXT ON LABOR LAW 64 (1976).

*Leedom v. Kyne* does not directly address this issue. Nonetheless, the prevailing view in the federal court decisions handed down since *Kyne* appears to be that,

> [i]n spite of the Board's exceeding its statutory authority, equity relief would probably not

have been available in *Kyne* had the employer, rather than the union, been contesting the certification, for the employer would have had access to appellate review by refusing to bargain and contesting the unfair labor practice case. Without stating it expressly, the Court in *Kyne* appears to have been influenced by the unavailability to the union of appellate review.

II THE DEVELOPING LABOR LAW 1716 (C. Morris, ed., 2d ed. 1983) (footnotes omitted).

The availability of indirect judicial review always has been considered to be an important consideration in the opinions of the circuit, *see Miami Newspaper Printing Pressmen's Union Local 46 v. McCulloch,* 322 F.2d at 997 n. 7, *Atlas Life Ins. Co. v. Leedom,* 284 F.2d 231, 232 (D.C.Cir.1960), and *Leedom v. IBEW,* 278 F.2d 237, 239 (D.C.Cir.1960), and we can find no warrant to ignore this precedent in this case.

Some courts appear instead to probe the merits of the plaintiff's claim to a determination that the Board has acted properly, and only then dismiss for lack of jurisdiction. *Courts should guard against this review of Board decisions on the merits conducted in the guise of determining jurisdiction.*

R. GORMAN, BASIC TEXT ON LABOR LAW 64–65 (1976) (citations omitted) (emphasis added). We fully endorse this prescription as an accurate statement of the law.

■ With this in mind, we have little trouble in deciding that appellant's arguments regarding the alleged "mandatory" terms of section 9(c)(1) must fail. There is certainly nothing in the explicit language of the statute that *compels* the policy judgments that have been urged upon us by the appellant. And, to the extent that these issues have been considered in the past, appellant's positions have been firmly rejected by this court.

To our knowledge, only two decisions dealing with the alleged "mandatory" quality of section 9(c)(1) have been rendered by this court. In the first, *Miami Newspaper Printing Pressmen's Union Local 46 v. McCulloch,* 322 F.2d 993 (D.C.Cir.1963), the court ruled that the Board could not refuse to certify the results of an election where it was claimed that a Board agent acted improperly during the election but the alleged infirmity had been rectified and the agent's actions did not affect the validity of the election. *Id.* at 998. In reaching this result, the court ruled that *"[o]n these facts, we hold that 9(c)(1) imposes a mandatory duty on the Board to certify the results of an election." Id.* (emphasis added). The opinion cautioned, however, that *"[c]learly, 9(c)(1) is not mandatory in all instances." Id.* at 997 (emphasis added).

It is also highly noteworthy that the court in *Miami Newspaper* obviously was persuaded to find jurisdiction because, absent direct judicial review, the complaining union had no apparent means of redress. *Id.* at 997 n. 7. On this point the court stated that "the *Leedom v. Kyne* remedy was not devised for the benefit of an employer [who has an adequate means of appeal by refusing to bargain and challenging certification in an unfair labor practice proceeding]." *Id.*

In light of the foregoing holdings in *Miami Newspaper,* it can hardly be found here that the Board violated a clear and specific statutory mandate in declining to certify. Furthermore, as has already been indicated, the appellant in this case has access to the congressionally prescribed means of indirect review to challenge the Board's orders. Therefore, whatever the merits of the appellant's claim, the District Court was without jurisdiction to resolve this case under *Kyne.*

The second case, albeit arising in the context of an unfair labor practice proceeding (on indirect review of a Board certification order), is equally important in indicating the reach of section 9(c)(1). In *Bell & Howell Co. v. NLRB,* 598 F.2d 136 (D.C.Cir.), *cert. denied,* 442 U.S. 942, 99 S.Ct. 2885, 61 L.Ed.2d 312 (1979), the court observed that

[a]lthough, by its terms, § 9(c)(1) is mandatory, the Board may nonetheless deny certification to a victorious union in certain limited circumstances. The Board most often exercises this authority to deny certification when the electoral process itself is tainted. The Board may also decline to certify a union that has interests that conflict with those of the employees in the unit the union seeks to represent. These decisions illustrate that the mandatory language of § 9(c)(1) has been, and must be read in harmony with the basic purposes of the LMRA. Where certification would be inconsistent with the dominant purposes of the Act, the Board has the discretion to deny it, despite the union's electoral victory.

*Id.* at 145 (footnotes omitted).

■ *Bell & Howell* thus makes it clear that "the Board has discretion" to deny certification in appropriate cases to further the basic purposes of the Act. On the face of it, we can find no better reason for the Board to deny certification than when the winning union makes an unequivocal post-election disclaimer of interest. Whether

the disclaimer is unequivocal and voluntary are purely factual issues that may not be addressed on direct review under *Kyne*. *See Boire v. Greyhound Corp.*, 376 U.S. at 481, 84 S.Ct. at 898. More importantly, however, we surely cannot say that as a matter of law the Board is totally without authority to deny certification to a union that has disclaimed any interest in representing bargaining unit employees after an election victory. Such a determination is clearly within the range of discretion allowed the Board pursuant to our decision in *Bell & Howell*.

### C. *Summary*

All things considered, the opinion of the District Court was absolutely correct in concluding that, first, because Hartz had not demonstrated that the Board had violated a clear and specific statutory mandate and, second, because Hartz had access to indirect judicial review of the Board's actions under the unfair labor practice procedures contained in section 10 of the Act, summary judgment should be granted in favor of the Board. Appellant has sought to enmesh this court (and the District Court before it) in the merits of its dispute in order to invoke jurisdiction under *Kyne*. We reject this approach as wholly foreclosed by the statute, applicable Supreme Court precedent and the law of this circuit.

### III. CONCLUSION

For the reasons enumerated above, we affirm the District Court's summary judgment in favor of defendants on the ground that it did not have jurisdiction to review the Board representation orders challenged by Hartz.

*So ordered.*