UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL 400, United Food and Commercial Workers International Union, AFL–CIO, CLC, Plaintiffs,

v.

Donald R. DOTSON, et al., Defendants.

Civ. A. No. 84–1691.

United States District Court, District of Columbia.

June 26, 1984.

Carey R. Butsavage, Lechner & Butsavage, P.C., Washington, D.C., for plaintiffs.

Aileen A. Armstrong, Asst. Gen. Counsel for Special Litigation N.L.R.B., Washington, D.C., for defendants.

## MEMORANDUM

OBERDORFER, District Judge.

This case involves the straightforward question of whether, under *Miami Newspaper Printing Pressman's Union Local 46 v. McCulloch*, 322 F.2d 993 (D.C.Cir. 1963), this Court has jurisdiction to mandate that the National Labor Relations Board (hereinafter the "Board") certify the results of a union representation election it conducted in 1982.

The facts are summarized in the Court's memorandum of June 4, 1984, which is attached as Exhibit A. The order explained in that memorandum denied plaintiffs' motion to enjoin a then imminent election, but required the Board to impound the ballots pending decision on a motion to dismiss. The Board has now moved to dismiss for lack of jurisdiction. The accompanying Order grants that motion, while briefly continuing the impoundment until the plaintiffs can, if they wish, seek relief in the Court of Appeals.

In *Miami Newspaper*, our Court of Appeals held that in certain circumstances district courts have jurisdiction to require the Board to comply with section 9(c)(1) of the National Labor Relations Act, 29 U.S.C. § 159(c)(1), by certifying the results of a union representation election. Citing *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 73 L.Ed.2d 210 (1958), the Court refused to permit the Board to refuse to certify an election merely because a single board member, rather than a panel, had passed on the employer's request for review of the direction of election. 322 F.2d at 998. Plaintiff here relies on *Miami Newspaper* to establish the jurisdiction of this Court to order the Board to certify an election in which, the Board maintains, four supervisors improperly participated. That reliance is misplaced, and defendants' motion to dismiss must be granted.

Writing for the Court in *Miami Newspaper*, Judge McGowan expressly noted that section 9(c)(1) does not require the Board to certify the results of all elections, and that in many circumstances courts lack jurisdiction to review decisions of the Board *not* to certify an election:

Clearly, 9(c)(1) is not mandatory in all instances. This Court, other courts of appeals, and the Board have recognized the authority and duty of the Board to set aside an election which has been unfairly conducted either because of employer or union coercion, or for some

reason having to do with the mechanics of the election process.[9]

[9] *N.L.R.B. v. National Truck Rental Co.,* 99 U.S.App.D.C. 259, 239 F.2d 422 (1956), *cert. denied,* 352 U.S. 1016, 77 S.Ct. 561, 1 L.Ed.2d 547 (1957).

*Miami Newspaper, supra,* 322 F.2d at 997–98 & n. 9.

The case cited by Judge McGowan in the footnote quoted above is directly on point to today's dispute, and establishes that defendants' motion to dismiss should be granted. In *N.L.R.B. v. National Truck Rental Co.,* then Circuit Judge Warren Burger wrote for a panel considering whether the Board had discretion to set aside an election in which four foremen had improperly participated. He ruled for the Board in the following language:

The Board rested its action in calling a new election on "possible confusion" resulting from its own error in permitting the foremen to vote. Our problem is whether it was within the administrative competence of the Board to say the probability that the situation gave rise to confusion warranted the calling of a new election. It was admitted that respondent threatened dismissal of two of the foremen if the union won the election. In a small unit of 20 to 30 employees it is not unreasonable to assume that some of the men were aware of the threats. Conceivably some employees, friendly to the foremen, might have voted against the unions in order to save the foremen's jobs.[8] On the other hand, since they were included in the unit, these supervisors may have taken part in the pre-election campaign and influenced employees in a way they could not have done if they had not been so included. Moreover, some of the employees might have favored a union but not one which included foremen.

These opportunities for "possible coercion" and "confusion" resulted from the Board's erroneous action, and we believe it was not irrational or unreasonable for the Board, dealing with these close questions,[9] to conclude that the first election did not represent a free and fair expression of the employees' views. Certainly the Board is far better able than we to appraise the atmosphere surrounding an election and conclude that the situation justified setting aside the election.

[8] It is immaterial whether or not the foremen's jobs were actually in danger as long as the employees thought they were.

[9] On a question like this it is of some importance that the prejudice resulting from failure to set aside the election, if in fact votes were affected by the Board's mistake, is much greater than the prejudice resulting from a new election, if in fact there was no confusion or coercion.

239 F.2d at 425.

Of course, in today's case, unlike in *National Truck Rental,* there is no record evidence that any employee's vote was coerced or affected by the participation of supervisors in the election. The Board merely stated in a footnote that:

Although the results of that election showed a unanimous union victory, it was conducted in a unit in which almost 40 percent of the voters are statutory supervisors. In such circumstances we cannot conclude that the election was a fair gauge of the sentiments of the unit employees.

*Dale Service Corp. v. United Food & Commercial Workers Union, Local 400, AFL–CIO,* 269 NLRB No. 164 (Apr. 10, 1984) at 4 n. 9. This bare statement gives no express indication that the Board actually "appraised the atmosphere surrounding" the election here before it "concluded that the situation justified setting aside the election." *Compare N.L.R.B. v. National Truck Rental Co.,* 239 F.2d at 425. Nevertheless, the *National Truck Rental* case, and its citation by Judge McGowan in *Miami Newspaper,* strongly suggest that our Court of Appeals has left to the Board considerable discretion to appraise the atmosphere surrounding an election in which supervisors have participated without requiring the Board to follow any particular procedure in making its appraisal or use any particular form of finding with respect to such appraisal. Although the question is not free from doubt, this Court concludes that it lacks jurisdiction to review the Board's exercise of its discretion in the circumstances here. Because the question

is a close one, however, the parties should have an opportunity to obtain a reaction from the Court of Appeals before the impounded ballots are released. Accordingly, the accompanying order dismissing the complaint on the merits will also continue in force, until July 10, 1984, the Court's Order of June 4, 1984, impounding the disputed ballots.

## EXHIBIT A

## MEMORANDUM

Plaintiff, a union local which won a unanimous victory in a representation election among employees at a sewage treatment plant operated by the Dale Service Corporation, seeks a temporary restraining order against the National Labor Relations Board (the "Board"). The election in question occurred on January 21, 1982. The results were certified on January 29, 1982. Alleging that four senior operators were improperly included in the bargaining unit, Dale Services Corporation refused to bargain. The union duly sought and obtained a bargaining order from the Board, and on January 25, 1983, the Board filed suit in the United States Court of Appeals for the Fourth Circuit seeking enforcement of its order.

While the case was pending in the Fourth Circuit, the Board in an unrelated case reversed its own prior decision governing the standards to be applied to determine the supervisory status of employees. The proper classification of the four senior operators who voted in the 1982 Dale Services Corporation election was accordingly thrown into question. The Board thereafter withdrew its petition in the Fourth Circuit and, on April 10, 1984, issued a supplemental decision and order vacating its bargaining order and remanding to the District Director to conduct a new election. The April 10, 1984, decision stated that four senior operators had incorrectly been included in the bargaining unit in the 1982 election, and that although their votes were not essential to the outcome, "we cannot conclude that the election was a fair gauge of the sentiments of the unit employees." Supplemental Decision and Order of April 10, 1984, at 4 n. 9. The District Director

has scheduled a new election for June 7, 1984, three days hence.

Citing *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), and *Miami Newspaper Printing Pressmen's Union Local 46 v. McCulloch*, 322 F.2d 993 (D.C. Cir.1963), the union urges the Court to enjoin the impending election and to order the Board to certify the results of the 1982 election. At a hearing on this request on June 4, 1984, the Board orally moved to dismiss the case for lack of jurisdiction. Counsel argued at the hearing that the Board had properly exercised its discretion to order a new election in the circumstances of this case, and that such a decision is not subject to review in this Court.

The jurisdictional question is a difficult one. On the one hand, direct review of Board actions in representation cases is the exception rather than the rule, and the exception has been interpreted extremely narrowly. *See Hartz Mountain Corporation v. Dotson*, 727 F.2d 1308, 1312 (D.C. Cir.1984). On the other hand, there is more than superficial similarity between this case and *Miami Newspaper Printing, supra*, in which our Court of Appeals set aside a rerun election, ordered the Board to certify the results of an earlier election, and held that the District Court had jurisdiction to consider the suit under *Leedom v. Kyne, supra*. As in *Miami Newspaper Printing*, 322 F.2d at 996, counsel for the Board at the hearing in this case stated that part of the reason for ordering the new election might have been the Board's expectation that the Court of Appeals might order a rerun anyway upon challenge by the employer on appeal of the unfair labor practice charge. A possible distinction between *Miami Newspaper Printing* and this case is that the Board there refused to certify an election; here the Board certified the election but then later set it aside. Whether that distinction is sufficient to divest this Court of jurisdiction requires more careful consideration than is possible on the scant record before the Court, at least without more extensive briefing.

It is axiomatic that a federal court has jurisdiction to determine its jurisdiction,

4

and to issue orders to preserve the status quo pending that determination. *United States v. United Mine Workers of America*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947); *Brotherhood of Locomotive Firemen and Engineers v. Bangor & Aroostook Railroad Co.*, 380 F.2d 570, 583 (D.C. Cir.1967). The Board has undertaken promptly to file a motion to dismiss together with a memorandum of supporting points and authorities. Pending a ruling on that motion, the accompanying order requires the Board to impound the ballots in the June 7, 1984, election.* *See Miami Newspaper Printing, supra*, 322 F.2d at 996.

Date: June 4, 1984.

---

† Pending decision on the motion to dismiss, other aspects of the emergency relief sought by plaintiff are denied. Plaintiff will suffer no irreparable injury pending decision on the merits of the jurisdictional question as long as the ballots in the new election are properly impounded.