**INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL–CIO, Plaintiff,**

v.

**NATIONAL MEDIATION BOARD, et al., Defendants.**

**Civ. A. No. C.A.82–2216.**

United States District Court, District of Columbia.

March 28, 1985.

Thomas W. Gleason, New York City, for plaintiff.

Dennis P. Myers, N.C. Dept. of Justice, Raleigh, N.C., for defendants.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

Plaintiff International Longshoremen's Association, AFL–CIO ("ILA"), challenges a decision of the National Mediation Board ("NMB" or "Board") that it no longer possesses jurisdiction over employees of the North Carolina State Ports Authority ("SPA" or "Ports Authority"), because the Ports Authority has ceased to be a "carrier" within the meaning of the Railway Labor Act, 45 U.S.C. § 151 *et seq.* ("RLA" or the "Act"). The result of the determination is that the ILA ceases to be the Board-certified representative of the SPA's employees for collective bargaining purposes.

The parties have filed cross-motions for summary judgment which present two issues: first, whether judicial review of the NMB's determination is available at all; second, whether the Board's finding that the SPA is not a carrier is erroneous.[1] For the reasons set forth below, the Court concludes that it is itself without jurisdiction to review the Board's decision and will, therefore, grant defendants' motion for summary judgment and dismiss the complaint with prejudice.

The material facts appear from the administrative record and are not in dispute.

Plaintiff ILA is a labor organization representing workers in the longshore, warehouse and railroad industries. Defendant SPA is an agency of the State of North Carolina which owns and operates seaport facilities at Wilmington and Morehead City, North Carolina. In 1970, when the SPA also owned and operated terminal railroads connecting the ports with two main trunk line haul railroads passing through the state, the NMB, after a proper election, certified the ILA as the collective bargaining representative of the SPA's dockmen, warehousemen and security guards. There then followed a period of litigation concerning both the certification and the SPA's corresponding obligation to bargain with the union.[2] When it ended favorably to the ILA, two successive collective bargaining agreements were struck, the first covering the period July, 1975, through December, 1977, and the second January, 1978, through December, 1980.

In 1979, however, the North Carolina General Assembly passed "An Act to Establish the North Carolina Ports Railway Commission," N.C.Gen.Stat. § 143B–469 *et seq.*, creating the codefendant North Carolina Ports Railway Commission ("PRC" or "Railway Commission"), to take over and operate the SPA's railroad facilities, and the SPA and PRC entered into a number of agreements to accomplish the transfer.

In August, 1980, the ILA initiated a Board investigation of a dispute with the SPA over rate-of-pay rules and working conditions. The following January the SPA moved to dismiss the case for lack of jurisdiction, asserting that the transfer of its railroad equipment and functions to the PRC had divested it of its character as a "carrier" under the Act.[3] Following a series of hearings in June and July, 1981, the NMB issued its "Findings Upon Investigation," 9 NMB No. 120, of June 8, 1982, in which it concluded that the SPA was, in fact, no longer a carrier, and the ILA's authority to represent its employees therefore at an end. Plaintiff filed this action on July 30, 1982.

---

1. A third issue—whether the NMB exceeded its statutory authority when, on June 1, 1982, it delegated its authority to exercise all official functions of the Board to a single member who then proceeded to decide this case—has since been resolved by this Circuit in *Railroad Yardmasters of America v. Harris,* 721 F.2d 1332 (D.C.Cir.1983), holding that a single member may act for the Board pursuant to a validly issued delegation order.

2. *International Longshoremen's Association v. North Carolina Ports Authority,* 463 F.2d 1 (4th Cir.), *cert. denied,* 409 U.S. 982, 93 S.Ct. 318, 34 L.Ed.2d 245 (1972); *International Longshoremen's Association v. North Carolina Ports Authority,* 370 F.Supp. 33 (E.D.N.C.1974), *aff'd,* 511 F.2d 1007 (4th Cir.1975).

3. The term "carrier" is defined in 45 U.S.C. § 151, First.

The threshold issue is whether this Court has jurisdiction to review the NMB's decision at all. A general grant of jurisdiction is found in 28 U.S.C. § 1337(a), which gives the district courts original jurisdiction "of any civil action or proceeding arising under any Act of Congress regulating commerce." And the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, provides that:

[E]xcept to the extent that—
(1) statutes preclude judicial review; or
(2) agency action is committed to agency discretion by law....

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

5 U.S.C. §§ 701, 702. Thus, the presumption of the availability of judicial review created by the APA might indicate that, absent a statutory command to the contrary, the NMB's actions are as subject to scrutiny as those of any other agency.

Defendants contend, however, that the Supreme Court found just such a command when it decided *Switchmen's Union v. National Mediation Board,* 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943), an appeal from the NMB's resolution of a dispute between two unions representing yardmen employed by a single railroad company, as it had earlier in *American Federation of Labor v. NLRB,* 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347 (1940) in connection with an attempt to appeal a National Labor Relations Board certification order. Reversing the court of appeals which had affirmed a district court decision upholding the Board on the merits, the Supreme Court held in *Switchmen's Union* that the district court had no jurisdiction to review the NMB's certification decision notwithstanding it might have been based upon an erroneous interpretation of the statute. The Court

discerned a congressional intent to appoint the Board the "last terminal point" for the resolution of such matters; "[t]here was to be no dragging out of the controversy into other tribunals of law." 320 U.S. at 305, 64 S.Ct. at 99. Congress, it said, would have "made its desire plain," as it had in other sections of the RLA, if it had wanted to provide for review of Board decisions in the federal courts. *Id.* at 303, 305–06, 64 S.Ct. at 98, 99–100.[4]

In all the years since *Switchmen's Union* the Supreme Court has recognized but a single exception to the general rule of nonreviewability of *domestic* labor representation decisions: federal courts do have jurisdiction to "strike down an order of the Board made in excess of its delegated powers and contrary to a specific prohibition in the Act." *Leedom v. Kyne,* 358 U.S. 184, 188, 79 S.Ct. 180, 183, 3 L.Ed.2d 210 (1958).[5] But it has reaffirmed both *Switchmen's Union* and *American Federation of Labor v. NLRB* to thwart attempts to bring other labor representation cases to court; these cases still stand as islands of administrative invulnerability awash in the tide of judicial review which has engulfed other agencies since passage of the APA. *See Brotherhood of Railway & Steamship Clerks, etc. v. Association for the Benefit of Non-Contract Employees,* 380 U.S. 650, 85 S.Ct. 1192, 14 L.Ed.2d 133 (1965); *Boire v. Greyhound Corp.,* 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964).

The ILA argues that the Board's refusal to exercise jurisdiction effectively denies it access to any forum to vindicate its rights, a circumstance which the Supreme Court itself acknowledged in *Switchmen's Union* might be of significance. 320 U.S. at 300, 64 S.Ct. at 96. And other circuits have found themselves possessed of jurisdiction to review so-called "jurisdictional" decisions of the NMB. *See Delpro v. Brother-*

---

4. Congress did expressly provide for judicial review in 45 U.S.C. §§ 153, First (p) and 159, concerning disputes arising out of the failure of a carrier to comply with an order of the National Railroad Adjustment Board and impeachment of arbitration awards, respectively.

5. Decisions affecting foreign nationals are also an exception. *See McCulloch v. Sociedad Nacional de Marineros de Honduras,* 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963).

*hood Railway Carmen of the U.S. and Canada, AFL–CIO,* 676 F.2d 960 (3d Cir.), *cert. denied,* 459 U.S. 989, 103 S.Ct. 343, 74 L.Ed.2d 384 (1982).[6] The Court of Appeals for this Circuit, however, has twice recently rejected the contention that labor representation decisions of the NLRB are reviewable, holding that it is only when the agency has violated a clear and mandatory legislative provision (as it did in *Leedom v. Kyne*), *and* the party aggrieved has no alternative means of redress, that district courts may entertain actions to review its decisions, *Physicians National House Staff Association v. Fanning,* 642 F.2d 492 (D.C.Cir.1980), *cert. denied,* 450 U.S. 917, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1981); *Hartz Mountain Corporation v. Dotson,* 727 F.2d 1308 (D.C.Cir.1984), and no reason suggests itself for treating similar decisions of the NMB any differently.

The issue before the NMB upon which its "jurisdiction" depended in the instant case was whether the Ports Authority retained its identity as a railroad "carrier," notwithstanding the North Carolina legislature's intention to separate the dockside and inland transport aspects of the movement of goods through the state to market. In undertaking to decide that issue the NMB took evidence on the relationship between the State, the Ports Authority, and the Railway Commission, and made findings with respect to the genuineness of their independence of one another—all subjects which are entrusted, not prohibited, to the Board by the Act. Then, in reliance upon, and in accordance with one of its earlier decisions in the case of *South Carolina State Ports Authority,* 5 NMB 265 (November 4, 1969), the Board concluded:

> The facts and circumstances of the present case are virtually identical to those in *South Carolina Ports Authority.* No evidence has been presented to warrant a decision different from the one in that case. The Board finds that the Railway Commission is not directly or

indirectly owned or controlled by the Ports Authority. The Railway Commission has established its offices geographically and organizationally apart and independent of the Ports Authority. The Railway Commission keeps its own records, conducts its own labor relations policy and conducts its business transactions separate from those of the Ports Authority. Thus, any basis the Board had for asserting jurisdiction over any employees of the North Carolina State Ports Authority has been removed.

The facts, however, show that the Railway Commission has now assumed the Ports Authority's railroad operations. The Board, therefore, finds that the North Carolina Railway Commission is a carrier subject to the jurisdiction of the Railway Labor Act pursuant to Section 1, First, of the Act.

The Board further finds, on the record before it, that the Railway Commission is independent of the Ports Authority. Accordingly, the certifications held by the ILA are no longer of any effect since the Ports Authority is no longer a carrier within the meaning of the Railway Labor Act.

Whether or not the Board's findings are correct, in making them it resolved what were, in essence, "purely factual issues that may not be addressed on direct review under [*Leedom v.*] *Kyne,*" *Hartz Mountain Corp. v. Dotson,* 727 F.2d at 1315, for the merits of its decision should not be re-examined by this or any court "in the guise of determining jurisdiction," whether the Board's or its own. *Id.* at 1314 (quoting R. Gorman, Basic Text on Labor Law 64–65 (1976)).

Therefore, for the foregoing reasons, it is, this 28th day of March, 1985,

ORDERED, that plaintiff's motion for summary judgment is denied; and it is

---

6. See also *International Longshoremen's Association, AFL–CIO v. North Carolina Ports Authority,* 463 F.2d 1 (4th Cir.), *cert. denied,* 409 U.S. 982, 93 S.Ct. 318, 34 L.Ed.2d 245 (1972) (Board's jurisdictional determination that Ports Authority *is* a "carrier" is reviewable); *U.S. v. Feaster,* 410 F.2d 1354 (5th Cir.), *cert. denied,* 396 U.S. 962, 90 S.Ct. 427, 24 L.Ed.2d 426 (1969).

FURTHER ORDERED, that defendants' motion for summary judgment is granted, and the complaint is dismissed with prejudice.