**NATIONAL LABOR RELATIONS BOARD, Plaintiff–Appellee,**

v.

**CALIFORNIA HORSE RACING BOARD, Defendant–Appellant,**

and

**International Brotherhood of Electrical Workers, Local Union 1501, Defendant–Appellant.**

Nos. 90–15740, 90–15744.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 15, 1991.

Decided Aug. 6, 1991.

Cathy Christian, Deputy Atty. Gen., Sacramento, Cal., for California Horse Racing Bd.

David A. Rosenfeld, Van Bourg, Weinberg, Roger & Rosenfeld, San Francisco, Cal., for Intern. Broth. of Elec. Workers, Local Union 1501.

Corinna L. Metcalf, N.L.R.B., Washington, D.C., for plaintiff-appellee.

Before CHOY, GOODWIN and CANBY, Circuit Judges.

CANBY, Circuit Judge:

The California Horse Racing Board (CHRB) issued an administrative order requiring United Tote to negotiate a collective bargaining agreement with the International Brotherhood of Electrical Workers (Union). The National Labor Relations Board (Board) filed this action in federal district court, seeking an injunction against enforcement of the CHRB order and a declaration that the National Labor Relations Act (NLRA) preempted the CHRB jurisdiction over United Tote. The district court granted a preliminary injunction against the CHRB order, and the Union and the CHRB appeal. We affirm.

## BACKGROUND

United Tote manufactures and maintains "totalisator" systems, used to calculate and display pari-mutuel betting odds at horse and dog racing tracks. When United Tote entered into a contract to supply and service totalisator systems for an association of California horse racing fairs, the Union sought to represent its employees and negotiate a labor contract. United Tote, whose employees are not represented by

any union, refused to negotiate. The Union then sought, and was granted, an order from the CHRB requiring United Tote to enter into a collective bargaining agreement with the Union, pursuant to California statute.[1]

In response, United Tote filed an unfair labor practice charge with the Board, alleging that the Union's and the CHRB's actions violated sections 8(b)(1)(A) and (2) of the NLRA, 29 U.S.C. §§ 158(b)(1)(A) and (2). The Union and the CHRB responded that the Board had no jurisdiction over United Tote's labor relations because the Board had previously declined to assert jurisdiction over labor relations in the horse racing industry, generally.

The Board held United Tote's unfair labor practices charge in abeyance and brought this action in federal district court. The Board sought a declaration that CHRB jurisdiction over United Tote was preempted by the NLRA, and an injunction against enforcement of the CHRB order. The Board asserted that United Tote was an employer falling within its exclusive jurisdiction. The Board argued that its declination of jurisdiction over the horse racing industry did not apply because United Tote was not sufficiently involved in that industry. The Board further argued that its determination that United Tote did not fall within the Board's general declination of jurisdiction over the horse racing industry was discretionary and not reviewable by the district court.

The district court granted a preliminary injunction restraining enforcement of the CHRB order, and any other CHRB regulation of United Tote's labor relations. In issuing that order, the district court ruled that, once it had satisfied itself that the Board's assertion of jurisdiction over United Tote was authorized by the NLRA, it did not have subject matter jurisdiction to review the merits of the Board's decision to assert jurisdiction. The district court alternatively ruled that, if it had such jurisdic-

tion, the Board had not abused its discretion in asserting jurisdiction here. Under either ruling, the court held, a preliminary injunction was justified. This appeal followed. *See* 28 U.S.C. § 1292(a)(1).

## DISCUSSION

### A. The Board's assertion of jurisdiction.

Section 14(c)(1) of the NLRA provides that

> [t]he Board, in its discretion, may ... decline to assert jurisdiction over any labor dispute involving any class or category of employers, where, in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction.

29 U.S.C. § 164(c)(1).

We have held that the Board's discretionary power, granted by section 14(c)(1), to decline jurisdiction over a class or category of employers is "a matter of administrative policy within the Board's discretion ... and is not a question for the courts, ... in the absence of extraordinary circumstances, such as unjust discrimination." *NLRB v. Anthony Co.*, 557 F.2d 692, 695 (9th Cir. 1977) (quotations omitted). *See also New York Racing Ass'n v. NLRB*, 708 F.2d 46, 56–57 (2d Cir.), *cert. denied*, 464 U.S. 914, 104 S.Ct. 276, 78 L.Ed.2d 256 (1983).

Pursuant to section 14(c)(1), the Board promulgated a rule declining to assert jurisdiction over any proceeding "involving the horse racing and dog racing industries." 29 C.F.R. 103.3. When United Tote filed its unfair labor practices charge with the Board, the Board made an administrative determination that United Tote was not sufficiently involved with the horse racing industry to fall within the Board's categorical declination of jurisdiction over that industry. It is this refusal to decline jurisdiction which the Union and the CHRB contest. For the reasons stated below, we

---

**1.** The CHRB order enforced California Business and Professions Code section 19608.4, which requires that

> [a] satellite wagering facility ... shall, as a condition of operating, enter into a written contractual agreement with the bona fide labor organization which has historically represented the same or similar classifications of employees at the nearest horseracing meeting.

hold that the district court properly concluded that it lacked power to inquire into the merits of the Board's assertion of jurisdiction over United Tote.

### B. The scope of district court review of Board action in a Nash–Finch proceeding.

■ The Union and the CHRB concede that the Board has statutory jurisdiction over United Tote, pursuant to sections 2(2) and 10(a) of the NLRA, 29 U.S.C. §§ 152(2); 160(a). They also do not dispute that sections 10(e) and (f) of the NLRA normally confine judicial review of Board action to the courts of appeal, and provide for such review only upon petition for enforcement of, or appeal from, final Board orders. 29 U.S.C. § 160(e) and (f); *AFL v. NLRB*, 308 U.S. 401, 407–08, 60 S.Ct. 300, 303–04, 84 L.Ed. 347 (1940); *Bays v. Miller*, 524 F.2d 631, 631–34 (9th Cir.1975); *Hartz Mountain Corp. v. Dotson*, 727 F.2d 1308, 1310 (D.C.Cir.1984). Finally, the parties do not dispute that when the Board properly exercises its jurisdiction under the NLRA, the district court, on the Board's motion, may enjoin the enforcement of state regulation as preempted by the Board's action. That power of the district court was confirmed by *NLRB v. Nash–Finch Co.*, 404 U.S. 138, 92 S.Ct. 373, 30 L.Ed.2d 328 (1971).

■ The Union and the CHRB assert, however, that because the Board has declined to assert jurisdiction over the horse racing industry generally, the district court in the exercise of its *Nash–Finch* jurisdiction must review the merits of the Board's determination not to decline jurisdiction over United Tote. The propriety, under the Board's own regulations, of asserting jurisdiction over United Tote depends, at least in part, on the factual question of the degree of United Tote's involvement in the horse racing industry. We cannot accept the contention that decision of this issue, which involves no question of the Board's statutory power under the NLRA, was within the jurisdiction of the district court in a *Nash–Finch* injunctive proceeding.

The proper scope of district court review of Board action under the district court's *Nash–Finch* jurisdiction is an issue of first impression.[2] In *Nash–Finch*, the Supreme Court crafted an exception to the Anti-Injunction Act's prohibition of district court injunctions of state court proceedings. 28 U.S.C. § 2283. The Court held that, to "prevent frustrations of the purposes of the [NLRA]," *Nash–Finch*, 404 U.S. at 142, 92 S.Ct. at 376, the NLRA grants "implied authority of the Board, in spite of the command of § 2283, to enjoin state action where its federal power preempts the field." *Id.* at 144, 92 S.Ct. at 377.

Thus, the source of *Nash–Finch* jurisdiction is the NLRA itself,[3] and its purpose is to protect NLRA preemption. Jurisdiction

**2.** The Eleventh Circuit, in *Florida Board of Business Regulation v. NLRB*, 686 F.2d 1362 (1982), ruled on a very similar issue, although not in the context of a *Nash–Finch* proceeding. In that case, the state had sought declaratory judgments that the Board's assertion of jurisdiction over the jai alai industry violated the Tenth Amendment and the NLRA, because the Board's action was inconsistent with its declination of jurisdiction over the dog and horse racing industries. The district court denied declaratory relief and the Eleventh Circuit reversed. We disagree with the Eleventh Circuit's decision insofar as it concludes that the district court had jurisdiction to review the merits of the Board's assertion of jurisdiction. See note 3, *infra*.

**3.** The Union and the CHRB argue that the scope of the district court's *Nash–Finch* jurisdiction is determined by the broad grant of power to district courts to entertain cases "arising under" statutes regulating commerce, 28 U.S.C. § 1337, or "arising under" federal law generally, 28

U.S.C. § 1331. In *Florida Board of Business Regulation*, 686 F.2d at 1370, the Eleventh Circuit held, inter alia, that section 1331 empowered the district court to review, in a declaratory judgment action brought by a state agency, whether "the Board, in refusing to decline to assert jurisdiction over the Florida jai alai industry, abused the discretion given it by section 14(c)(1) of the [NLRA] because it directly contravened the firm policy it had established for identical employees in the horse and dog racing branches of Florida's gambling industry." *Id.* With all respect, we disagree with that decision. The Supreme Court in *Nash–Finch* expressly declined to rely on the exception to the Anti-Injunction Act for district court actions "in aid of its [section 1337] jurisdiction." 404 U.S. at 142, 92 S.Ct. at 376. Instead, the Court held that *Nash–Finch* jurisdiction is implicitly granted by the NLRA itself. *Id.* at 141–42, 144, 92 S.Ct. at 375–76, 377. Section 10 of the NLRA thus establishes, by its very existence, limits upon the district court's power of review here. *See Whit-*

designed to protect the NLRA's integrity should not operate in a way that does violence to that Act's express provisions for exclusive review by courts of appeals of *final* orders of the Board.

The nature of NLRA preemption confirms that conclusion. *Nash–Finch* expressly relied on *Garner v. Teamsters Union*, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228 (1953), for the proposition that the NLRA preempted state regulation of labor relations. In *Garner*, the court said:

Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribed a particular procedure for investigation, complaint and notice, and hearing and decision, *including judicial relief pending a final administrative order.*

346 U.S. at 490, 74 S.Ct. at 165 (emphasis added).

Thus, *Garner* demonstrates that the "superior federal interest[s]," *Nash–Finch*, 404 U.S. at 146, 92 S.Ct. at 378, which *Nash–Finch* authorized the district courts to protect, were not only the substantive powers of the Board, but also the integrated statutory scheme by which the Board is governed, including section 10's provision for exclusive appellate review of final orders by the courts of appeals. The court's most prominent NLRA preemption case, *San Diego Building Trades v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), is even more explicit on this score.

When it is clear *or may fairly be assumed* that the activities which a state purports to regulate are protected by § 7 of the [NLRA], or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield....

\*   \*   \*   \*   \*   \*

It is not for us to decide whether the [Board] would have, or should have, decided these questions in the same manner [as did the California court]. When an activity is *arguably subject to* § 7 or § 8 of the [NLRA], the states *as well as the federal courts* must defer to the exclusive competence of the [Board] if the danger of state interference with national policy is to be averted....

... If the Board decides, *subject to appropriate federal judicial review*, that conduct is protected by § 7 or § 8, then the matter is at an end, and the States are ousted of all jurisdiction.

*Garmon*, 359 U.S. at 244–45, 79 S.Ct. at 779–80 (emphasis added).

*Garner* and *Garmon* together make clear that the exercise of federal preemption as to the *states* does not dilute the NLRA's constraints on *federal* judicial review of Board action. What constitutes "appropriate federal judicial review" is enumerated in section 10(e) and (f) of the NLRA—exclusive review of final Board orders by the courts of appeals. Nothing in *Nash–Finch* supports the conclusion that, in protecting the Board from encroachment by state regulators, the Supreme Court subjected the Board to expanded intervention by the federal judiciary beyond that provided by the review provisions of the NLRA itself.

The Supreme Court has permitted only the narrowest of exceptions to the statutory scheme permitting review only of final Board orders by the courts of appeals. In *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), the Court held that the district court had subject matter jurisdiction to review the Board's certification of a bargaining unit, in spite of the exclusive appellate review provisions of section 10, but only because the claim in that case was that the Board acted "in excess of its delegated powers and contrary to a specific prohibition in the Act." *Id.* at 188, 79 S.Ct. at 183. Thus, the court held that sections 10(e) and (f) did not apply because the suit was not one to " 'review' ... a decision of the Board made within its jurisdiction." *Id.*

*ney Bank v. New Orleans Bank*, 379 U.S. 411, 422, 85 S.Ct. 551, 558, 13 L.Ed.2d 386 (1965) (general federal question jurisdiction is qualified by more specific statutory limitations on

that jurisdiction); *Louisville & Nashville R. Co. v. Donovan*, 713 F.2d 1243, 1245 (6th Cir.1983) (same), *cert. denied*, 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984).

The limited scope of *Kyne* was emphasized in *Boire v. Greyhound Corp.*, 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964), where the Court acknowledged that the NLRA's provision for exclusive appellate review of Board action imposed significant delays upon attempts to challenge such action, but said that "it is equally obvious that Congress explicitly intended to impose precisely such delays." *Id.* 376 U.S. at 477–78, 84 S.Ct. at 896–97. The Court went on to delineate why the case before it could not fall within the *"Kyne* exception" to exclusive appellate review of Board action:

> [W]hether Greyhound possessed sufficient indicia of control to be an "employer[,]" is essentially a factual issue, unlike the question in *Kyne,* which depended solely upon construction of the [NLRA]. The *Kyne* exception is a narrow one, not to be extended to permit plenary district court review of Board orders in certification proceedings whenever it can be said that an erroneous assessment of the particular facts before the Board has led it to a conclusion which does not comport with the law. Judicial review in such a situation has been limited by Congress to the courts of appeals, and then only under the conditions explicitly laid down in § 9(d) of the [NLRA].[4]

*Id.,* 376 U.S. at 481, 84 S.Ct. at 899.

■ The same considerations lead us to conclude that the issue raised by United Tote and the CHRB, the resolution of which depends upon questions of fact and policy that are the standard fare of the Board, cannot fall within the narrow exception to the statutory scheme of judicial review established in *Nash–Finch. Nash–Finch* 's exception must be no broader than necessary to accomplish its purpose. That purpose is to protect Congress's system of national regulation of labor relations by authorizing district courts to enjoin state proceedings "where [the Board's] federal power preempts the field." *Nash–Finch,* 404 U.S. at 144, 92 S.Ct. at 377. When, in the present case, the Board asked the district court to enjoin the enforcement of CHRB's order against United Tote, the district court necessarily had jurisdiction to determine whether the Board's exercise of power under the NLRA preempted state regulation.[5] The district court satisfied itself that the NLRA authorized the Board's jurisdiction over United Tote, and none of the parties disputes that conclusion on this appeal. That is the end of the matter, then, because that conclusion supports, indeed requires, the district court's corollary ruling that CHRB's order is preempted. To go beyond those determinations and to rule on the propriety, under the Board's own regulations, of the Board's decision to assert jurisdiction, would have exceeded the district court's *Nash–Finch* jurisdiction, limited as it was by considerations underlying the scheme of appellate review established by the NLRA.

## CONCLUSION

The Union and the CHRB concede the Board's statutory authority over United Tote, and they invoke no exception to normal rules of federal preemption. Their contentions that the Board insufficiently followed its own administrative rules, or improperly failed to include them in its horse racing exception, are beyond the power of the district court to entertain in

---

4. Section 9 of the NLRA incorporates, by reference, the exclusive appellate review provisions of section 10(e) and (f). *Boire,* 376 U.S. at 476–79, 84 S.Ct. at 896–98.

5. Although they did not deal directly with the limits of the district courts' *Nash–Finch* jurisdiction, several decisions have implicitly upheld the district courts' power to decide whether state law has been preempted. *See NLRB v. Committee of Interns & Residents,* 566 F.2d 810 (2d Cir.1977) (state regulation preempted where Board had asserted jurisdiction but had determined that workers at issue were not entitled to collective bargaining rights under NLRA), *cert.*

denied, 435 U.S. 904, 98 S.Ct. 1449, 55 L.Ed.2d 495 (1978); *NLRB v. State of New York,* 436 F.Supp. 335 (E.D.N.Y.1977), *aff'd,* 591 F.2d 1331 (2d Cir.1978). *See also Florida Board of Business Regulation v. NLRB,* 686 F.2d 1362 (1982), where the 11th Circuit held, inter alia, that a district court had jurisdiction, in a declaratory judgment action brought by a state agency, to review whether "the Board's jurisdiction … impermissibly impinged on a State industry in violation of the tenth amendment." *Id.* at 1370. Our disagreement with another part of the *Florida Board* decision is discussed in note 3, *supra.*

this *Nash–Finch* proceeding.[6] Whether United Tote is sufficiently "involved" in the horse racing industry to be treated as the Board treats that industry, is the kind of fact-bound, non-statutory question that must await review before this court on appeal from, or petition for enforcement of, a final order of the Board.[7]

The preliminary injunction entered by the district court is AFFIRMED.

**6.** We consequently do not address the district court's alternative ruling, which rejected those contentions on the merits.

**7.** Eventual appellate review of the Board's action here will be circumscribed by the narrow review accorded to Board declinations of jurisdiction pursuant to section 14(c)(1) of the NLRA. *NLRB v. Anthony,* 557 F.2d 692, 695 (9th Cir.1977). How narrowly that case restricts review of the Board's refusal to decline jurisdiction is an issue that need be addressed only when such an appeal is properly presented.

The Union and the CHRB may also be frustrated in their ability to obtain eventual judicial review by the possibility that, once asserting jurisdiction, the Board may never issue a final order from which they may appeal. That there is a possibility of these parties never obtaining plenary review of the Board's assertion of jurisdiction does not affect our ruling, however. *See New York Racing Ass'n v. NLRB,* 708 F.2d 46, 56–57 (2d Cir.), *cert. denied,* 464 U.S. 914, 104 S.Ct. 276, 78 L.Ed.2d 256 (1983):

In the ordinary case, ... review is merely delayed until after an election has been held and an unfair labor practice proceeding initiated; here, however, this will obviously never occur, since the Board has refused to act at all. The short answer to this argument is that 'not every governmental action is subject to review by judges.' *United States ex rel. Kaloudis v. Shaughnessy,* 180 F.2d 489, 491 (2d Cir.1950) (L.Hand, Ch. J). The Racing Association is in the same position as any party who seeks an election but is unsuccessful in persuading the Regional Director to order one. (Footnote omitted).

*See also Physicians Nat'l House Staff Ass'n v. Fanning,* 642 F.2d 492, 499 (D.C.Cir.1980), *cert. denied,* 450 U.S. 917, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1981) ("Congress has considered the likelihood that some Board decisions in representation proceedings may evade all judicial review. Nevertheless, it has rejected attempts to provide review in such cases").