James P. 0 ’Donnell, J.
This is an action for a declaratory judgment, brought by John L. Lascaris, Commissioner of the Department of Social Services of Onondaga County, against- *213 George K. Wyman, individually and as Commissioner of the Department of Social Services of the State of New York.
The plaintiff seeks an interpretation of section 131 (subds. 1, 4) of the Social Welfare Law (now Social Services Law) as the law applies to striking employees. The Attorney-General appears for the defendant, interposes an answer, and sets forth an affirmative defense that the State Commissioner in the instant case has made a determination that welfare assistance shall he granted to those unable to maintain themselves where:
(a) The applicant is a striking worker staying from work because of a union-management conflict, where the worker is a member of the union.
(b) The applicant is not a member of the union but remains away from work because of union-management conflict.
The Manufacturers Association of Syracuse and the Chamber of Commerce of Syracuse, New York, appear as amici curies in support of plaintiff’s position. Local 320 of the International Union of Electrical Workers and the Greater Labor Council of Syracuse appear amici curies in support of the defendant’s position.
The matter comes before the court solely upon the pleadings and certain stipulations entered into by the parties. It is in the nature of a motion for summary judgment.
Subdivision 1 of section 131 of the Social Services Law states: “ 1. It shall be the duty of social services officials, insofar as funds are available for that purpose, to provide adequately for those unable to maintain themselves, in accordance with the requirements of this article and other provisions of this chapter. They shall, whenever possible, administer such care, treatment and service as may restore such persons to a condition of self-support or self-jare, and shall further give such service to those liable to become destitute as may prevent the necessity of their becoming public charges.”
Subdivision 4 provides: “ 4. No assistance or care shall be given to an employable person who has not registered with the nearest local employment agency of the department of labor or has refused to accept employment in which he is able to engage.
“ A person shall be deemed to have refused to accept such employment if he:
“ a. fails to obtain and file with the social services district at least once in every two-week period a new certificate from the appropriate local employment office of the state department of labor stating that such employment office has no order for an opening in part-time, full-time, temporary or permanent employment in which the applicant is able to engage, or
*214 ‘ ‘ b. wilfully fails to report for an interview at an employment office with respect to employment when requested to do so by such office, or
“ c. wilfully fails to report to such office the result of a referral to employment, or
11 d. wilfully fails to report for employment. Such wilful failures or refusal as above listed shall be reported immediately to the social services district by such employment office.
‘ ‘ This shall not apply to persons who cannot register with such employment agency because of age, health or other disability.M
The parties stipulate that the General Electric employees went out on strike; that the company is open to those employees desiring to work, providing they cross an existing picket line of the union.
The County Commissioner does not deny the family of the striking employee, including the wife and children, from welfare assistance, if they so qualify.
The statute is silent as to whether or not a striking employee may qualify for welfare benefits if he refuses to go back to work for his employer. The Attorney-General raises the point that, if the strikers were to be excluded, the Legislature would so state, since the Legislature in setting up the Unemployment Insurance Benefits Law in section 592 of the Labor Law, established a seven-week waiting period for strikers seeking benefits resulting from industrial controversy. The main purpose of this provision after the loss of employment due to an industrial controversy is that the State is to stand aside pending settlement of the employer-employee differences to avoid the imputation that a strike may be financed through unemployment benefits. (Matter of Burger [Corsi], 277 App. Div. 234, affd. 303 N. Y. 654.) The above provision of the law would apply to all employees and is different than the provisions of the Social Services Law which would only apply to those people who are in dire need of assistance.
The courts in this State have long recognized the rights of employees to form labor unions, collectively bargain with their employers, conduct strikes and conduct orderly and reasonable picket lines in conjunction with the strikes. Loss of employment because of strikes, lockouts and other industrial controversy is recognized by subdivision 1 of section 592 of the Labor Law as well as case law on the same. (Matter of Heitzenrater [Hooker Chem. Corp. — Catherwood], 19 N Y 2d 1; Matter of Freeman [Catherwood], 9 A D 2d 1008,)
*215 The court holds that you cannot read the Social Services Law by itself but rather you must read the certain provisions of the Labor Law in conjunction therewith.
It is the opinion of the court that the striking employee, whether he be union or nonunion mémber, has vested rights under the Labor Law and a strict and narrow construction of the Social Services Law should not defeat these rights.
Since 1952 the State Commissioner of Social Welfare has authorized payment of welfare benefits to those employees who otherwise qualify when they lose employment by reason of strikes, citing 11 strikes. The State Legislature has never changed the law in view of that administrative policy. By their silence, the court must interpret the legislative intent of the statute as not having been violated by this policy.
There has been no prior case law in New York State that seems to touch upon this subject. To the court’s knowledge the only case that covers the subject occurred in the State olIllinois. In a taxpayer’s action brought in the Circuit Court of Illinois, the plaintiff sought to enjoin the State Treasurer and the Commissioner of Public Aid from making welfare benefits to striking workers. As in the instant case, the State Commissioner authorized payments. The Illinois court held striking employees, if otherwise qualified, could be paid welfare benefits. (Strat-O-Seal Mfg. Co. v. Scott, 72 Ill. App. 2d 480.)
Where an employee loses employment by reason of a bona fide strike, lockout or other industrial controversy, this will not be a bar to the employee in obtaining welfare assistance if he otherwise qualifies. Strict and narrow application of subdivision 4 of section 131 of the Social Welfare Law cannot be used to force the employee back to work and forfeit his rights under the Labor Law. The court holds that striking employees, whether union or nonunion members, when they lose employment by reason of union-management conflict, may still qualify for welfare benefits if the particular employee meets the other economic qualifications and other provisions of the statute.
The order for a preliminary injunction granted November 6, 1969, by the Honorable Francis R. Moran, Justice of the Supreme Court, enjoining the defendant from discountinuing State aid or threatening thereto, be and hereby is vacated.