**UNITED EURAM CORPORATION,**
Plaintiff,

v.

**UNION OF SOVIET SOCIALIST REPUB-LICS, Ministry of Culture of the Union of Soviet Socialist Republics, the State Concert Society of the Union of Soviet Socialist Republics, a/k/a Gosconcert, United States of America and .Madison Square Garden Center, Inc., Defendants.**

No. 77 CIV. 6329(MP).

United States District Court,
S. D. New York.

Dec. 4, 1978.

Tenzer, Greenblatt, Fallon & Kaplan, New York City, by Edward L. Sadowsky, New York City, for plaintiff.

Wolf, Popper, Ross, Wolf & Jones, New York City, by Eric L. Keisman, New York City, for defendants.

## OPINION

·POLLACK, District Judge.

The defendants have moved under Rule 12(b) of the Fed.R.Civ.P. to dismiss the complaint on various grounds. For the reasons given below, the motion is denied in all respects.

The plaintiff is an impressario. The defendants are the U.S.S.R., its Ministry of Culture, and the State Concert Society of the U.S.S.R., "Gosconcert." Pursuant to a cultural exchange agreement between the United States and the U.S.S.R., the plaintiff and Gosconcert signed several contracts. Under these contracts, Gosconcert was to send artists to the United States and Great Britain to give performances organized by the plaintiff, and the plaintiff was to pay a fee to Gosconcert, the salaries of the artists, and the expenses of the tour. The plaintiff has sued for breach of those contracts.

The defendants now move, first, to dismiss the complaint against all defendants on the grounds that they are immune from suit because the statutory "commercial activity" exception to sovereign immunity does not apply; second, to dismiss the complaint against the U.S.S.R. and the Ministry of Culture because they are entities distinct from Gosconcert and were not parties to the contracts; and, third, to dismiss the complaint against the U.S.S.R. because no effective service has been made on it.

*"Commercial Activity" Exception to Sovereign Immunity*

■ Section 4(a) of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605(a)(2), provides:

> A foreign state [or any agency or instrumentality thereof] shall not be immune from the jurisdiction of courts of the United States or of the States in any case—
>
> .　　.　　.　　.　　.
>
> in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States . . . .

"Commercial activity" is defined in the statute to mean:

> either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose. (*Id.*, 28 U.S.C. § 1603(d).)

The defendants argue that because the contracts were signed pursuant to the cultural exchange agreement between the United States and the U.S.S.R., they are artistic and governmental, not commercial, in character. The plaintiff counters that the purpose of the activity is irrelevant under the Act and that the contracts were "commercial" because they were agreements to trade services for cash. Both parties rely on the Report on the Act by the House Judiciary Committee, whose relevant part states in full:

> (d) *Commercial activity.*—Paragraph (c) of section 1603 defines the "commercial activity" as including a broad spectrum of endeavor, from an individual commercial transaction or act to a regu-

lar course of commercial conduct. A "regular course of commercial conduct" includes the carrying on of a commercial enterprise such as a mineral extraction company, an airline or a state trading corporation. Certainly, if an activity is customarily carried on for profit, its commercial nature could readily be assumed. At the other end of the spectrum, a single contract, if of the same character as a contract which might be made by a private person, could constitute a "particular transaction or act."

As the definition indicates, the fact that goods or services to be procured through a contract are to be used for a public purpose is irrelevant; it is the essentially commercial nature of an activity or transaction that is critical. Thus, a contract by a foreign government to buy provisions or equipment for its armed forces or to construct a government building constitutes a commercial activity. The same would be true of a contract to make repairs on an embassy building. Such contracts should be considered to be commercial contracts, even if their ultimate object is to further a public function.

By contrast, a foreign state's mere participation in a foreign assistance program administered by the Agency for International Development (AID) is an activity whose essential nature is public or governmental, and it would not itself constitute a commercial activity. By the same token, a foreign state's activities in and "contacts" with the United States resulting from or necessitated by participation in such a program would not in themselves constitute a sufficient commercial nexus with the United States so as to give rise to jurisdiction (see sec. 1330) or to assets which could be subjected to attachment or execution with respect to unrelated commercial transactions (see sec. 1610(b)). However, a transaction to obtain goods or services from private parties would not lose its otherwise commercial character because it was entered into in connection with an AID program. Also public or governmental and not com-

mercial in nature, would be the employment of diplomatic, civil service, or military personnel, but not the employment of American citizens or third country nationals by the foreign state in the United States.

The courts would have a great deal of latitude in determining what is a "commercial activity" for purposes of this bill. It has seemed unwise to attempt an excessively precise definition of this term, even if that were practicable. Activities such as a foreign government's sale of a service or a product, its leasing of property, its borrowing of money, its employment or engagement of laborers, clerical staff or public relations or marketing agents, or its investment in a security of an American corporation, would be among those included within the definition.

(H.Rep. No. 487, 94th Cong., 2d Sess. 16 (1976); U.S.Code Cong. & Admin.News 1976, pp. 1604, 1614.)

The defendants' argument that the contracts were "artistic" and "governmental," not "commercial," activity fails for two reasons. First, the contracts required the plaintiff to pay a fee in cash to Gosconcert, as well as the salaries of the artists and expenses of the tour. Thus Gosconcert was engaged in the "sale of a service," which the House Report names as a "commercial activity." Second, the Act itself provides that the purpose of an activity—here, allegedly, to promote the goals of the cultural exchange agreement—is irrelevant in determining its commercial character.

The defendants call attention to *Gittler v. German Information Center*, 408 N.Y.S.2d 600 (Sup.Ct.N.Y.Co.1978). There the plaintiff allegedly worked on documentary films for the German Information Center, a section of the Consulate General of the Federal Republic of Germany, for which services plaintiff was not paid. The Court held that the films promoted · "friendly relations," therefore were "diplomatic activity," and thus that the defendant was entitled to immunity under *Victory Transport Inc. v. Comisaria General*, 336 F.2d 354, 360 (2d

Cir. 1964), *cert. denied,* 381 U.S. 934, 85 S.Ct. 1763, 14 L.Ed.2d 698 (1965).

In *Victory Transport* the Court of Appeals listed five categories of acts that traditionally had been accorded immunity. One of these was "acts concerning diplomatic activity." As noted in von Mehren, *The Foreign Sovereign Immunities Act of 1976,* 17 Colum. J. Transnational L. 33, 48–54 (1978), however, the categories summarized in *Victory Transport* were superseded by the Act, including its definition of "commercial activity," 28 U.S.C. § 1603(d). Apparently *Gittler,* in relying on *Victory Transport,* overlooked the change of law made by Congress after *Victory Transport* was decided. For example, one category of immunity in *Victory Transport* was "public loans," yet the House Report on the Act named "a foreign government's . . . borrowing of money" as a commercial activity. Thus the defendants' reliance on *Gittler* is misplaced.

■ The defendants argue also that insofar as the plaintiff's second cause of action alleges interference with contract rights it is barred by 28 U.S.C. § 1605(a)(5)(B), which provides:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—
>
> . . . . .
>
> not otherwise encompassed in paragraph (2) above, in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph shall not apply to—
>
> . . . . .
>
> any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.

Subsection (a)(5) was intended to cover non-commercial torts, however, and the restrictions embodied in subsection (a)(5)(B) were not intended to restrict the scope of the commercial activity exception in subsection (a)(2). *See Yessenin-Volpin v. Novosti Press Agency,* 443 F.Supp. 849, 855 (S.D.N.Y.1978).

### Liability of the U.S.S.R. and the Ministry of Culture on the Contracts

■ The defendants argue that under Soviet law the U.S.S.R. and the Ministry of Culture are entities distinct from Gosconcert and are not liable for its debts or commitments. Therefore the claims against the U.S.S.R. and the Ministry of Culture should be dismissed.

The plaintiff replies that Gosconcert's independence is purely formal, and that even if Gosconcert is independent from the U.S.S.R. and the Ministry, it was acting as their agent in these transactions. The plaintiff's vice-president states that the negotiations were conducted by officials of both Gosconcert and the Ministry, and that Gosconcert did not sign the contracts until they were finally approved by the Ministry. Thus, the plaintiff concludes, the relation of Gosconcert to the other defendants is a material fact in issue.

The complaint, when read liberally, and the statement that negotiations were conducted by at least one official of the Ministry of Culture and that the contracts were approved by the Ministry, allege sufficiently to withstand a motion to dismiss that Gosconcert was a subdivision of, or was acting on behalf of, the other defendants. In reaching this conclusion, however, the Court intimates no view of the relation between the defendants as it may appear in fact through evidence, and acts now without prejudice to any motion that may be made on an evidentiary showing.

### Service on the U.S.S.R.

■ The defendants argue that the plaintiff has not made proper service on the U.S.S.R. and therefore that the complaint should be dismissed as to it. The plaintiff

has filed the certificate of mailing issued by the Clerk of the Court and the registered mail receipt issued by the Post Office to the sender, but not the receipt to be signed by the recipient and returnable by the Post Office to the sender. The U.S.S.R. admits that if it received the summons and complaint but refused to sign the receipt, service would have been effective. Thus, whether the U.S.S.R. received the summons and complaint is a question of fact that cannot be resolved at this stage without an evidentiary inquiry. This problem would be solved in any event if the plaintiff would serve the U.S.S.R. through diplomatic channels, as authorized by § 4(a) of the Act, 28 U.S.C. § 1608(a)(4).

For the foregoing reasons, the motion to dismiss the complaint is denied.

SO ORDERED.