**GOETHE HOUSE NEW YORK,
GERMAN CULTURAL
CENTER, Plaintiff,**

**v.**

**NATIONAL LABOR RELATIONS BOARD; James M. Stephens, individually and in his capacity as Chairman of the National Labor Relations Board, Wilford W. Johansen, Marshall B. Babson and Mary Miller Cracraft, individually and in their capacity as members of the National Labor Relations Board; and Daniel J. Silverman, individually and in his capacity as Regional Director of the National Labor Relations Board, Region 2, Defendants.**

**No. 88 Civ. 3467 (RO).**

United States District Court,
S.D. New York.

June 7, 1988.

Jackson, Lewis, Schnitzler & Krupman, New York City, for plaintiff; James R. Williams, Penny Lieberman, of counsel.

National Labor Relations Bd., New York City, for defendants; Diane Rosse, of counsel.

## MEMORANDUM AND ORDER

OWEN, District Judge:

Plaintiff Goethe House seeks to preliminarily enjoin the National Labor Relations Board from further processing a representation petition or conducting a representation election for plaintiff's seven non-German employees[1] in New York City as ordered on April 15, 1988. For the reasons set forth below, the preliminary injunction is granted.

Goethe House is a not-for-profit organization which promotes German culture and German cultural foreign policy in the United States. It maintains a library and a language department providing teaching materials and curriculum guidance to teachers of German; its cultural programs department sponsors films and lectures about German culture. Goethe House's authority comes from the Foreign Office of the West German government which is the exclusive source of its funding, and it operates under a governmentally imposed budget containing a number of provisions regulating the employment of its German and non-German employees (such as the number of employees to be hired; employees' salaries; and approval procedures for the establishment of new employee lines).

At issue is whether the National Labor Relations Board may order Goethe House to conduct an election for union representation of its non-German employees. Goethe House contends that, as a branch of the West German government promoting cultural foreign policy, it is not subject to the jurisdiction of United States courts or administrative agencies under the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1602 *et seq.*, and that review of the NLRB's order is properly before this Court. The NLRB, while conceding that Goethe House is an "agency or instrumentality of a foreign state" as defined in 28 U.S.C. § 1603(b) and as such it enjoys immunity under the FSIA, nevertheless contends that Goethe House is engaged in "commercial activity" as defined in 28 U.S.C. §§ 1603(d) and 1605(a)(2) in hiring non-German employees, and therefore is not immune from the NLRB's jurisdiction under the "commercial activity" exception. The NLRB further asserts that, since the activities involved do not have international ramifications and the NLRB has not exceeded its statutory mandate under the National Labor Relations Act, 29 U.S.C. § 151 *et seq.*, in ordering a representation election, the plaintiff has failed to demonstrate a basis for district court jurisdiction. Consequently, the Board asserts that Goethe House must follow the usual procedure for challenging Board action: viz., allowing the representation election to go forward and, in the event that the union should prevail, refusing to bargain with the union as a prerequisite to appellate review. *See Spencer v. NLRB,* 712 F.2d 539, 565 (D.C. Cir.1983), *cert. denied,* 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984).

As to the threshold jurisdictional question, the Supreme Court has stated that district court review of NLRB orders in certification proceedings is narrowly proscribed and intervention may only occur under "extraordinary circumstances." *Boire v. Greyhound Corp.,* 376 U.S. 473, 479, 84 S.Ct. 894, 898, 11 L.Ed.2d 849 (1964). Such a circumstance is recognized by *McCulloch v. Sociedad Nacional,* 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963),

---

1. The vast majority of Goethe House's New York City employees are German nationals; their representation is not before this Court. This action involves Goethe House's seven non-German employees: its bookkeeper, assistant librarian, administrative assistant, secretary, messenger, custodian and maintenance person, who are Americans.

in which district court jurisdiction to review NLRB representation orders was permitted in "the presence of public questions particularly high in the scale of our national interest because of their international complexion[.]" *Id.* at 17, 83 S.Ct. at 675. Such internationally sensitive concerns, the Court observed, provide "a uniquely compelling justification for prompt judicial resolution of the controversy over the Board's power" in the district courts. *Id.* at 16–17, 83 S.Ct. at 674–75.

The facts here, as in *McCulloch, supra,* justify such intervention. Goethe House's activities, including its staffing and employment policies, are controlled entirely by the West German government. Requiring Goethe House to submit to NLRB jurisdiction might well conflict or otherwise interfere with the German government's employment objectives in implementing cultural foreign policy. Such entanglement in a foreign government's policy objectives is clearly not within the scope of administrative agency jurisdiction,[2] and might well "raise considerable disturbance ... in our international relations" and "lead to embarrassment in foreign affairs." 372 U.S. at 19, 83 S.Ct. at 676.[3]

Turning to the merits, the Court must determine whether Goethe House will suffer irreparable harm if the Board is not enjoined, and either likelihood of success on the merits or "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of the hardships tipping decidedly in the movant's favor." *LeSportsac, Inc. v. K Mart Corp.,* 754 F.2d 71, 74 (2d Cir.1985).

■ A denial of injunctive relief, resulting in Goethe House's having to go forward with the representation election, would undoubtedly cause Goethe House irreparable harm in the sensitive area of foreign relations, since Goethe House's employment policies are controlled entirely by

the German government, and could engender diplomatic embarrassment if the union prevailed in the election. Goethe House would then be forced either to bargain with the union in contravention of some or all of the German government's personnel mandates or, alternatively, to obtain review it would have to commit an unfair labor practice under the National Labor Relations Act, 29 U.S.C. § 158(a)(5), such as refusing to bargain with the union as the employees' representative.

■ Moreover, Goethe House has demonstrated a likelihood of success on the merits in this action. The Board contests Goethe House's claim that ordering representation proceedings would violate Goethe House's immunity from judicial or administrative proceedings as a foreign instrumentality under the FSIA, 28 U.S.C. § 1602 *et seq.* In support of its contention, the Board states that Goethe House cannot claim immunity because its activities in hiring non-German employees to perform clerical, administrative and maintenance functions fall under the commercial activity exception to immunity under 28 U.S.C. §§ 1603(d), 1605(a)(2).

The legislative history behind the FSIA states:

[P]ublic or governmental and not commercial in nature, would be the employment of diplomatic, civil service, or military personnel, but not the employment of American citizens or third country nationals by the foreign state in the United States.

The courts would have a great deal of latitude in determining what is a "commercial activity" for purposes of this bill. It has seemed unwise to attempt an excessively precise definition of this term, even if that were practicable. Activities such as a foreign government's sale of a service or a product, its leasing of property, its borrowing of money, its employ-

---

2. Moreover, Goethe House points out that the union seeking to represent its non-German employees is part of the AFL–CIO, which has declared its opposition to allegedly restrictive trade policies of various nations, including West Germany.

3. Given the applicability of the *McCulloch* exception, the Court takes no position on the issue of whether the Board has acted beyond the scope of its statutory mandate so as to invoke the exception set forth in *Leedom v. Kyne,* 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958).

ment or engagement of laborers, clerical staff or public relations or marketing agents, or its investment in a security of an American corporation, would be among those included within the definition.

H.R.Rep. No. 1487, 94th Cong., 2d Sess. 16, *reprinted in* 1976 U.S.Code Cong. & Admin.News 6604, 6615.

It is however one thing to protect and preserve a remedy in American courts for an unpaid American vendor or employee by defining that relationship as a "commercial" exception, and on the other hand to justify thereby the right of a United States agency to intervene into the underlying employment structure of a conceded arm of a foreign state that is not involved in commercial activity. Support for this view is found in the fact that courts which have found the commercial activity exception to exist in the employment context have done so as to employment contracts between the foreign state or instrumentality and a single individual. *See, e.g., Segni v. Commercial Office of Spain*, 650 F.Supp. 1042 (N.D.Ill.), *aff'd*, 835 F.2d 160 (7th Cir.1987); *United Euram Corp. v. Union of Soviet Socialist Republics*, 461 F.Supp. 609 (S.D. N.Y.1978).[4]

In conclusion, plaintiff Goethe House, having demonstrated 1) that it will suffer irreparable harm in the absence of a preliminary injunction as well as 2) a likelihood of success on the merits of its claim that the "commercial activity" exception to sovereign immunity does not apply, the preliminary injunction is granted.

So ordered.

---

**4.** Compare cases in this Circuit and elsewhere which have applied the "commercial activity" exception to defeat immunity in contexts clearly "commercial" in totality: *State Bank of India v. NLRB*, 808 F.2d 526, 530 (7th Cir.1986) (where foreign controlled bank performed same services as any American bank, was subject to federal and state banking regulations, and local managers made many decisions in bank's operation, NLRB jurisdiction upheld), *cert. denied*, —— U.S. ——, 107 S.Ct. 3229, 97 L.Ed.2d 735 (1987); *Texas Trading & Milling Corp. v. Federal Republic of Nigeria*, 647 F.2d 300 (2d Cir.1981) (breach of contract actions for sale of cement to foreign state held "commercial activity" and foreign state not immune), *cert. denied*, 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982).