869 F.2d 75
 130 L.R.R.M. (BNA) 2768, 57 USLW 2502,
111 Lab.Cas. P 11,004
 GOETHE HOUSE NEW YORK, GERMAN CULTURAL CENTER, Plaintiff-Appellee,
v.
NATIONAL LABOR RELATIONS BOARD, James M. Stephens,
individually and in his capacity as chairman of the National
Labor Relations Board, Wilford W. Johansen, Marshall B.
Babson and Mary Miller Cracraft, individually and in their
capacity as Members of the National Labor Relations Board,
and Daniel J. Silverman, individually and in his capacity as
Regional Director of the National Labor Relations Board,
Region 2, Defendants-Appellants.
 No. 281, Docket 88-6156.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 20, 1988.
Decided Feb. 16, 1989.
 
 Diane Rosse, Atty., N.L.R.B., Washington, D.C., for defendants-appellants (Margery E. Lieber, Asst. Gen. Counsel for Sp. Litigation, Rosemary M. Collyer, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, N.L.R.B., Washington, D.C., of counsel).
 James R. Williams, New York City, for plaintiff-appellee (Penny Ann Lieberman, Jackson, Lewis, Schnitzler & Krupman, of counsel).
 Before LUMBARD, CARDAMONE and PIERCE, Circuit Judges.
 PIERCE, Circuit Judge:
 
 
 1
 Appellant National Labor Relations Board ("the Board") appeals from an order of the United States District Court for the Southern District of New York, Judge Richard Owen, which granted the petition of appellee Goethe House New York, German Cultural Center ("Goethe House"), for a preliminary injunction enjoining the Board from conducting a representation election for Goethe House's non-German employees. The district court lacked jurisdiction to review the Board's order which directed that the election be held; therefore, we reverse.
 
 BACKGROUND
 
 2
 Goethe House is one of 114 branches of the worldwide Goethe Institute for Promoting the Study of German Language Abroad and for International Cultural Cooperation ("Goethe Institute"). Goethe Institute, a nonprofit organization, is under contract with the Foreign Office of the Federal Republic of Germany ("West Germany") to promote German culture around the world. Funding for Goethe Institute comes exclusively from the government of West Germany. The West German government regulates the activities of Goethe Institute and its branches, including those of Goethe House. In particular, the Foreign Office of West Germany regulates the number of employees Goethe House hires and fires, the wages those employees receive and the duties they perform.
 
 
 3
 On March 5, 1982, District 65, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO ("the Union") filed a representation petition with Region Two of the Board, seeking certification as representative of Goethe House's non-German and non-managerial employees. The unit of employees the Union sought to represent consisted of a bookkeeper, an assistant librarian, an administrative assistant, a secretary, a messenger, a custodian and a maintenance worker. All of these employees were either United States citizens or nationals of nations other than Germany. The Goethe House employees who are German nationals are represented by a German union.
 
 
 4
 In March and April 1982, a hearing on the representation petition was held before a Board hearing officer for Region Two. Goethe House took the position that under the Foreign Sovereign Immunities Act, 28 U.S.C. Secs. 1602-1611 (1982), it was immune from the Board's jurisdiction and therefore the Board lacked the power to order a representation election for Goethe House's non-German employees. On May 12, 1982, the Board granted Goethe House's motion to have the case transferred to the Board's national office in Washington, D.C.
 
 
 5
 On March 29, 1988, the Board issued a decision in which it held that it had jurisdiction over Goethe House. 288 N.L.R.B. No. 29, at 12. The Board directed that an election be held to determine whether Goethe House's non-German employees wished to be represented by the Union. Id. at 13. On May 6, 1988, the Regional Director of Region Two of the Board ordered an election to be held on June 3.
 
 
 6
 On May 18, 1988, Goethe House filed a complaint in the United States District Court for the Southern District of New York, seeking a judgment declaring that the Board lacked jurisdiction over Goethe House and an injunction enjoining the Board from holding a representation election for Goethe House's non-German employees. The next day, following a hearing, Judge Inzer Wyatt issued a temporary restraining order prohibiting the Board from holding the election.
 
 
 7
 On May 26, 1988, Judge Owen heard oral argument on Goethe House's petition for a preliminary injunction. In a memorandum and order dated June 7, 1988, 685 F.Supp. 427, Judge Owen granted the preliminary injunction. Ruling on a threshold issue, the district court held that it had jurisdiction to review the Board's order directing that the election be held. As justification for its assertion of jurisdiction, the district court wrote that
 
 
 8
 [r]equiring Goethe House to submit to NLRB jurisdiction might well conflict or otherwise interfere with the German government's employment objectives in implementing cultural foreign policy. Such entanglement in a foreign government's policy objectives is clearly not within the scope of administrative agency jurisdiction, and might well "raise considerable disturbance ... in our international relations" and "lead to embarrassment in foreign affairs." 372 U.S. at 19 [83 S.Ct. at 676].
 
 
 9
 (footnotes omitted.). The district court granted the preliminary injunction on the grounds that Goethe House would suffer irreparable harm in the absence of the injunction and that Goethe House would likely succeed on the merits of its claim that it was exempt from the Board's jurisdiction.
 
 
 10
 On appeal, the Board argues that the district court (1) lacked jurisdiction to enjoin the representation election and (2) erred in holding that the requirements for a preliminary injunction had been met. Since we reverse the district court on the first issue, we do not reach the second issue.
 
 DISCUSSION
 
 11
 Generally, Board orders in representation proceedings are not directly reviewable in court. Boire v. Greyhound Corp., 376 U.S. 473, 476, 84 S.Ct. 894, 896, 11 L.Ed.2d 849 (1964). As a rule, to obtain judicial review of such an order, an employer must refuse to bargain with the union after the union has been certified, and then argue its case in a court of appeals after the Board has found the employer to have committed an unfair labor practice. See id. at 477, 84 S.Ct. at 896-97. In only two cases, Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), and McCulloch v. Sociedad Nacional de Marineros, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963), has the Supreme Court held that a district court has jurisdiction to review a Board order in a representation proceeding. Boire, 376 U.S. at 479-80, 84 S.Ct. at 897-98; Hartz Mountain Corp. v. Dotson, 727 F.2d 1308, 1311 (D.C.Cir.1984). Goethe House argues that herein the district court had the authority to enjoin the representation election under either Kyne or McCulloch.
 
 A. The Kyne Exception
 
 12
 In Kyne, the Board included professional and non-professional employees in the same bargaining unit, without first canvassing the professional employees to determine whether a majority of them favored inclusion in such a unit, even though Sec. 9(b)(1) of the National Labor Relations Act ("the NLRA"), 29 U.S.C. Sec. 159(b)(1), explicitly forbade the inclusion of non-professional and professional employees in the same unit unless a majority of the professional employees voted for such inclusion. 358 U.S. at 184-85, 79 S.Ct. at 181-82. In upholding the district court judgment which set aside the Board's determination of the bargaining unit, the Supreme Court wrote that the Board had acted "in excess of its delegated powers and contrary to a specific prohibition in the Act." Id. at 188, 79 S.Ct. at 184.
 
 
 13
 In Kyne, the Court established an "extremely narrow exception to the general rule that Board representation orders are not subject to direct judicial review." Hartz, 727 F.2d at 1311. This exception applies "[o]nly where the Board has clearly violated an express provision of the statute." Id. at 1312 (quoting 2 The Developing Labor Law 1717-18 (C. Morris ed., 2d ed. 1983)).
 
 
 14
 Here, Goethe House does not argue that the Board violated "a specific prohibition in the [NLRA]." Kyne, 358 U.S. at 188, 79 S.Ct. at 184. Citing Kyne, Goethe House argues instead that the Board, by asserting jurisdiction over Goethe House, acted in excess of its statutory mandate and in contravention of the Foreign Sovereign Immunities Act. Under Kyne, however, a district court does not have jurisdiction to review a Board order in a representation proceeding whenever that order may violate any statute; the district court has jurisdiction only when the order violates a specific prohibition of the NLRA. The Board's order here did not violate a specific prohibition of the NLRA and thus we conclude that Kyne provides no support for the district court's assertion of jurisdiction in this case.
 
 B. The McCulloch Exception
 
 15
 McCulloch, 372 U.S. 10, 83 S.Ct. 671, upon which the district court here relied for its assertion of jurisdiction, forms the second exception to the general rule that Board orders in representation proceedings are not directly reviewable. In McCulloch, the Board ordered an election after an American union sought certification as the representative of the crew members of certain vessels owned by a Honduran corporation. Id. at 12-13, 83 S.Ct. at 672-673. A Honduran union already represented the crew members, id. at 14, 83 S.Ct. at 674, all except one of whom were Honduran citizens, id. at 13, 83 S.Ct. at 673. Moreover, under Honduran law, only a union recognized by Honduras and at least ninety percent of whose members were Honduran citizens could represent crew members on Honduran ships. The American union met neither of these legal requirements. Id. at 14, 83 S.Ct. at 674.
 
 
 16
 The Supreme Court found that if the American union became the crew members' bargaining agent, a "head-on collision" with the Honduran union might result. Id. at 21, 83 S.Ct. at 677. The Court wrote that even if the Honduran union did not contest the American union's position as representative of the crew members, the American union's position, which would violate Honduran law, would "invite retaliatory action from other nations as well as Honduras." Id. In holding that the district court had jurisdiction to review the Board's order, the Court wrote that
 
 
 17
 the Board's assertion of power to determine the representation of foreign seamen aboard vessels under foreign flags has aroused vigorous protests from foreign governments and created international problems for our Government.... [T]he presence of public questions particularly high in the scale of our national interest because of their international complexion is a uniquely compelling justification for prompt judicial resolution of the controversy over the Board's power.
 
 
 18
 Id. at 16-17, 83 S.Ct. at 674-675.
 
 
 19
 Like Kyne, McCulloch is a case involving "extraordinary circumstances." Boire, 376 U.S. at 479, 84 S.Ct. at 898. The exception which McCulloch established is narrow; the Supreme Court did not intend for district courts to have jurisdiction "whenever the Board considers labor disputes having contacts with foreign nations." National Maritime Union v. NLRB, 267 F.Supp. 117, 120 n. 16 (S.D.N.Y.1967).
 
 
 20
 The facts of the present case do not provide a "uniquely compelling justification," McCulloch, 372 U.S. at 17, 83 S.Ct. at 675, for the district court's assertion of jurisdiction. Here, the Union is not seeking to represent German workers. Certification of the Union as representative of the employees in the bargaining unit would neither encroach on the membership of a German union nor violate German law. Since we find McCulloch to be clearly distinguishable, we conclude that the facts here do not fall within the narrow exception established by McCulloch to the general rule that Board orders in representation proceedings are not directly reviewable.
 
 
 21
 To justify its assertion of jurisdiction, the district court wrote that requiring Goethe House to submit to NLRB jurisdiction might interfere with the West German government's "employment objectives in implementing cultural foreign policy" and might cause disturbances and embarrassment in international relations. In our view, the district court's concerns were largely unfounded and did not warrant the court's intervention in the case. Even if the Union were certified as the bargaining agent of Goethe House's non-German employees, we fail to see how the presence of the Union would interfere with Goethe House's implementation of West German cultural foreign policy. Under the NLRA, Goethe House would have a duty to bargain with the Union over wages, hours and other terms and conditions of employment. See First Nat'l Maintenance Corp. v. NLRB, 452 U.S. 666, 674, 101 S.Ct. 2573, 2578, 69 L.Ed.2d 318 (1981); 29 U.S.C. Sec. 158(d) (1982). Goethe House would have no duty to bargain over how it performed its mission of promoting German culture. See Local 777, Democratic Union Organizing Comm. v. NLRB, 603 F.2d 862, 883 (D.C.Cir.1978) (employer need not bargain over issues fundamental to the basic direction of the enterprise). Moreover, the fact that the German employees at Goethe House presently are unionized belies the prospect that the presence of a union for the non-German employees would hamper Goethe House's operations.
 
 
 22
 While it is true that the Union might interfere with the West German government's "employment objectives," in the sense that it might deprive that government of the power to unilaterally determine working conditions for Goethe House's non-German employees, we do not believe this loss of unilateral control constitutes a "uniquely compelling justification," 372 U.S. at 17, 83 S.Ct. at 675, for the district court to assert jurisdiction, especially since the West German government does not exercise unilateral control over employment conditions for Goethe House's German employees.
 
 
 23
 We also fail to see how the Board's assertion of jurisdiction would cause disturbances and embarrassment in international relations. In its opinion, the district court did not explain how such disturbances might occur. However, during oral argument, Judge Owen alluded to the possibility that Goethe House's non-German employees might "go on strike ... [and] carry signs saying the German government is unfair to American workers." Assuming arguendo that such a display occurs and results in embarrassment to the West German government, it would be the assertion of the right to strike and picket by Goethe House's non-German employees, and not the Board's assertion of jurisdiction over Goethe House, which would account for the situation.
 
 
 24
 Whether or not the NLRA is found to apply to relations between Goethe House and its non-German employees, those employees already have the right to strike and to picket peacefully in public areas. In cases in which the NLRA has been found to be inapplicable to a labor dispute because of the dispute's international complexion, the Supreme Court has held that state law may be applied. See American Radio Ass'n v. Mobile Steamship Ass'n, 419 U.S. 215, 228, 95 S.Ct. 409, 417, 42 L.Ed.2d 399 (1974); Windward Shipping v. American Radio Ass'n, 415 U.S. 104, 115-16, 94 S.Ct. 959, 965-66, 39 L.Ed.2d 195 (1974). Here, Goethe House's non-German employees are guaranteed the right to strike by New York law. See Lascaris v. Wyman, 61 Misc.2d 212, 214, 305 N.Y.S.2d 212, 216 (Sup.Ct.1969); N.Y.Lab. Law Sec. 703 (McKinney 1988). Moreover, they are guaranteed the right peacefully to picket in public areas by the first amendment. See Thornhill v. Alabama, 310 U.S. 88, 98-102, 60 S.Ct. 736, 742-44, 84 L.Ed. 1093 (1940); Johansen v. San Diego County Dist. Council of Carpenters, 745 F.2d 1289, 1293 (9th Cir.1984). Indeed, the effect of the Board's assertion of jurisdiction in this case may well be to lessen, not increase, the chance of strikes and picket lines at Goethe House. See NLRB v. Jones & Laughlin Steel Corp., 301 U.S. 1, 42, 57 S.Ct. 615, 626-27, 81 L.Ed. 893 (1937) ("Experience has abundantly demonstrated that the recognition of the right of employees to self-organization and to have representatives of their own choosing for the purpose of collective bargaining is often an essential condition of industrial peace."); 29 U.S.C. Sec. 151 (1982) ("Experience has proved that protection by law of the right of employees to organize and bargain collectively ... remov[es] certain recognized sources of industrial strife and unrest....").
 
 
 25
 In discussing the possible deleterious effects of the Board's assertion of jurisdiction in this case, the district court also noted that "Goethe House points out that the union seeking to represent its non-German employees is part of the AFL-CIO, which has declared its opposition to allegedly restrictive trade policies of various nations, including West Germany." The district court failed to explain the relevance of this fact and we fail to discern any from our review. We are not persuaded by the suggestion that a small number of non-managerial employees at Goethe House might cause international disturbances simply because the union which they may choose to join is affiliated with a federation of labor unions which, we will assume arguendo, opposes West Germany's trade policies.
 
 C. Indirect Review
 
 26
 Another aspect of this case which distinguishes it from Kyne and McCulloch is that here the plaintiff, Goethe House, is an employer. As an employer, Goethe House has the option of seeking indirect review of the Board's order by refusing to bargain with the Union if it is certified, and then seeking review of its position in a court of appeals. In Kyne, by contrast, the plaintiff in the district court was a labor organization. As a labor organization, it did not have the option, available to an employer, to seek indirect judicial review of the Board's action. Because indirect review was unavailable in Kyne, the case for direct review was more compelling. Indeed, the District of Columbia Circuit has opined that had the aggrieved party in Kyne been an employer and thus able to seek indirect judicial review, the Supreme Court probably would have held that the district court lacked jurisdiction over the case. Hartz, 727 F.2d at 1312 n. 2 (" '[E]quity relief would probably not have been available in Kyne had the employer, rather than the union, been contesting the certification.' ") (quoting 2 The Developing Labor Law 1716 (C. Morris ed., 2d ed. 1983)).
 
 
 27
 In McCulloch, the Supreme Court took appeals from two related cases, one initiated in district court by an employer and one initiated by a union. 372 U.S. at 15-16, 83 S.Ct. at 674-675. The Court decided to adjudicate only the union-initiated case, and declined to rule on whether the district court had jurisdiction in the employer-initiated case. Id. at 16, 83 S.Ct. at 674-675. We believe it significant that the Court's holding in McCulloch, as in Kyne, that the district court had jurisdiction, applied to the union-initiated case. Here, since Goethe House is an employer and can seek indirect review, there was no warrant for the district court to assert jurisdiction.
 
 CONCLUSION
 
 28
 The Board's order violates no specific prohibition of the NLRA and presents no compelling international implications. Moreover, Goethe House can obtain indirect judicial review of the Board's order. Therefore, we reverse the order of the district court.
 
 LUMBARD, Circuit Judge, dissenting:
 
 29
 I dissent.
 
 
 30
 The district court properly exercised its jurisdiction to review the Board's order directing that a representation election be held among the non-German employees of Goethe House; the record supports Judge Owen's grant of a preliminary injunction. There is no doubt that Goethe House, although a private nonprofit association, functions as a branch of the West German government promoting its national culture, a customary activity of foreign governments everywhere. It follows from this that Goethe House is not subject to the jurisdiction of United States courts or administrative agencies under the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. Sec. 1602 et seq. Thus the district court had the authority to review the Board's order mandating a representation election for Goethe House's non-German employees, and, on the undisputed facts, to enjoin such action.
 
 
 31
 The majority distinguishes the instant case from McCulloch v. Sociedad Nacional de Marineros de Honduras, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963), on the grounds that an American union's representation of the non-German employees at Goethe House would neither encroach on the membership of a foreign union nor violate the foreign sovereign's law, as was the case in McCulloch. However, McCulloch is predicated on the broad premise that conflicts with foreign sovereigns are to be avoided, not on a technical distinction regarding the identities of the parties to the case. The McCulloch Court held that the district court had properly exercised its jurisdiction because the "international complexion" of the issues presented created "a uniquely compelling justification for prompt judicial resolution of the controversy over the Board's power." McCulloch, supra, at 17, 83 S.Ct. at 675. The "international complexion", not the facts narrowly construed, set McCulloch and this case apart from wholly domestic labor disputes.
 
 
 32
 The same compelling justification that was present in McCulloch exists here. The question of whether the FSIA renders Goethe House immune to the jurisdiction of United States administrative agencies such as the Board is one that should be resolved speedily to avoid possible disturbances and embarrassment in our international relations. Today's decision forces Goethe House to commit an unfair labor practice by refusing to bargain with the unit's certified bargaining representative in order to obtain review of the Board's exercise of jurisdiction. If there is a basis for the refusal, such proceedings should be avoided.
 
 
 33
 The Board has not brought to our attention any case in which any United States agency has successfully asserted its jurisdiction over Goethe House or any similar establishment of a foreign government that engages in what so patently are foreign relations activities. I find it inappropriate to force so indelicate a result in this case, with its extensive foreign relations ramifications.
 
 
 34
 Judge Owen's determination that Goethe House is not engaged in commercial activity for the purposes of section 1605(a)(2) of the FSIA, 28 U.S.C. Sec. 1605(a)(2), and is therefore rendered immune by that act, is unassailable. Unlike the employer in State Bank of India v. NLRB, 808 F.2d 526 (7th Cir.1986), cert. denied, 483 U.S. 1005, 107 S.Ct. 3229, 97 L.Ed.2d 735 (1987), Goethe House only sells items incidentally to its central mission, which is to promote German culture in all its manifestations in literature, music, art and other cultural activities. The Board's proposition that the mere hiring of seven non-German employees (among up to 40 German employees) itself manifests commercial activity is not persuasive. It strains logic to suggest that any time a foreign sovereign employs a messenger, a bookkeeper or a custodian, it becomes thereby a commercial enterprise and is subject to the jurisdiction of American administrative agencies.
 
 
 35
 The district court properly exercised its jurisdiction in this case involving international relations and it certainly did not abuse its discretion when it preliminarily enjoined the representation election, American Cyanamid Co. v. Campagna per le Farmacie in Italia S.p.A., et al., 847 F.2d 53, 55 (2d Cir.1988) (per curiam ), quoting Standard & Poor's Corp., Inc. v. Commodity Exchange, Inc., 683 F.2d 704, 708 (2d Cir.1982). I would affirm the order of the district court.